The Terre Haute and Indianapolis Railroad Company

*v.*

Julia Voelker.

*Filed at Mt. Vernon June 17, 1889.*

1. Practice—*specific objection—as a waiver of all other objections.* A specific objection to evidence based solely upon a particular fact, is strictly a waiver of all objections based upon other facts not specified or relied on. This rule is based upon the equitable consideration, that if the other objections had been made it might have been in the power of the party offering the evidence to obviate them.

2. A certified copy of an ordinance, when offered in evidence, was objected to on the specific ground that it was not signed by the mayor and city clerk of the city. The charter provided three modes by which ordinances passed might become operative: First, by the approval of the mayor, evidenced by his signature; second, by a majority vote of the council on reconsideration, after being returned by the mayor, with his objections; and third, by being retained by the mayor more than five days: *Held,* that the objection was properly overruled, as it did not cover all the modes by which the ordinance might have become operative.

3. In such case, if it had been objected that the ordinance had not gone into effect in either of the modes provided by the charter, the party offering the same might have been able to show that it had been

Syllabus.

passed over the mayor's veto, or that it had become operative by his retaining it more than five days without signing it.

4. Ordinance—*mayor's certificate—of its proper office.* The signature of the mayor, when he approves an ordinance, is no part of the ordinance itself, any more than are the minutes of the proceedings of the city council in which is recorded the vote by which the ordinance was passed. It is merely the evidence of his approval.

5. Same—*how authenticated—what it must show on its face.* While, under the charter of the city of East St. Louis, an ordinance can have no validity until it has been passed by the council. and then placed in the mayor's office, and afterward approved and signed by him, or retained without action beyond the prescribed period, or passed over his veto by a call of the ayes and noes, yet the ordinance need not bear on its face the evidence of all or any of these proceedings, except, of course, when it is signed by the mayor such signature will necessarily appear.

6. Under a city charter, which provides that "all ordinances and resolutions of the city may be proven by the seal of the corporation," etc., a copy of an ordinance certified to be such by the city clerk, and authenticated by the corporate seal, is competent evidence tending to show that the ordinance had been duly passed by the city council, and had gone into effect in some one of the modes prescribed by the charter.

7. Negligence—*what constitutes negligence—as a conclusion of law.* What constitutes negligence is ordinarily a question of fact for the jury. There may be conduct, however, so clearly and palpably negligent that all reasonable minds, without hesitation or dissent, would so pronounce it. When that is so, the inference of negligence may properly be said to be a necessary one, and such conduct may be treated as negligent *per se.*

8. Same—*omission of statutory duty by railway company.* The omission of a railway company to perform its statutory duty in relation to ringing a bell or sounding a whistle on approaching a highway crossing, resulting in injury to another, is negligence *per se,* or as a conclusion of law. A statute commanding an act to be done, creates an absolute duty to perform the act, and the duty of performance does not depend upon and is not controlled by surrounding circumstances.

9. Same—*contributory and comparative negligence—care required at highway crossings.* An instruction embodying the proposition of law that a party's going upon a railroad track at a point where it crosses a highway or street, without looking or listening for approaching trains, is negligence *per se,* and that such conduct, in case of an injury at such crossing, constitutes such contributory negligence as will bar a recovery therefor, is properly refused, in an action against the railway company to recover for the injury.

129 540
182 274

129 540
184 391

129 540
190 12219
190 13307
94a 10458
129 599
94a 7367

129 540
192 14 35
96a 8185

129 540
f193 8211

129 540
103a 8372

129 540
203 13517
106a 10139

129 540
110a 13555

10.   But when the question arises upon a state of facts on which reasonable men may arrive at different conclusions, the fact of negligence can not be determined until one or the other of these conclusions has been determined by the jury.  Negligence can not be conclusively established by a state of facts upon which fair-minded men may well differ.

11.   It is doubtless a rule of law, that a person approaching a railway crossing is bound, in so doing, to exercise such care, caution and circumspection to foresee danger and avoid injury as ordinary prudence would require, having in view all the known dangers of the situation; but precisely what such requirements would be, must manifestly differ with the ever-varying circumstances under which such approach may be made.

12.   No invariable rule, however, can be predicated upon the mere fact of failing to look or listen; but a jury, properly instructed as to the legal duty in respect to care and caution of a person approaching a railway crossing, must draw from such act, in connection with all the attendant circumstances, the proper conclusion as to whether he is guilty of negligence or not.

13.   The neglect or failure of a person approaching a railway crossing to look or listen for an approaching train, is mere evidence on the question of contributory negligence, like any other to be submitted to the jury.  To omit looking and listening when neither can be of any avail, as, when the track is hidden from sight, or other sounds drown the noise of the cars, is not contributory negligence.  The omission to take such precautionary steps does not necessarily, and as a question of law, constitute negligence, but is proper to be considered by the jury as evidence bearing on the question, as one of fact.

14.   VERDICT—*special finding—whether it will control general verdict.* On the trial of an action by an administrator, against a railway company, for the killing of the plaintiff's intestate by a collision at a street crossing, in which was involved the question of the defendant's negligence and also that of the deceased, the defendant asked the court to submit to the jury the question whether the deceased could have seen or heard the defendant's train approaching the crossing if he had looked or listened for it before he drove or went on the crossing, at the time he received the injury, which the court refused to give without modification:   *Held,* that the question, as proposed, called for a finding as to mere evidentiary facts, none of which, if found either way, could have had any controlling effect upon the general verdict.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. GEORGE W. WALL, Judge, presiding.

Mr. John G. Williams, and Mr. A. S. Wilderman, for the appellant:

The so-called ordinances 460 and 462 were improperly admitted in evidence, because not signed and approved by the mayor of East St. Louis, the law providing that if he approves he shall sign, etc. City Charter, (1 Private Laws of 1869, p. 896,) art. 4, sec. 9; *State* v. *Newark,* 1 Dutch. 399; *State* v. *Jersey City,* 1 Vroom, 148; *Howard* v. *Jersey City,* id. 93; *Dey* v. *Jersey City,* 19 N. J. Eq. 412; *In re Breaux's Bridge,* 30 La. Ann. 1105.

When a precedent act or step is necessary to the validity of an ordinance, it must be proved. *Schott* v. *People,* 89 Ill. 195; *Railroad Co.* v. *Hughes,* 38 id. 174.

The burden of proof rests on the plaintiff, not only to show negligence in the defendant, but also that the deceased exercised ordinary care to avoid the injury. *Railroad Co.* v. *Johnson,* 103 Ill. 521; *Railroad Co.* v. *Evans,* 88 id. 63; *Railroad Co.* v. *Damerell,* 81 id. 450; *Railroad Co.* v. *Godfrey,* 71 id. 500; *Railroad Co.* v. *Lee,* 68 id. 576; *Railroad Co.* v. *Godfrey,* 58 id. 272; *City of Mendota* v. *Fay,* 1 Bradw. 418; *Tolman* v. *Railroad Co.* 98 N. Y. 198; 50 Am. Rep. 649.

It is culpable negligence to cross the tracks of a railroad at a highway crossing, without looking to see if a train is approaching. 2 Rorer on Railroads, 1031, 1032; 3 Woods on Railways, 1302, 1303; Beach on Contributory Negligence, 191, 194; *Railroad Co.* v. *Dimick,* 96 Ill. 43; *Railroad Co.* v. *Hetherington,* 83 id. 510; *Railroad Co.* v. *Hart,* 87 id. 529; *Railroad Co.* v. *Harwood,* 80 id. 88; *Railway Co.* v. *Hatch,* 79 id. 137.

Where the neglect of those precautions appears, it is uniformly declared by the courts that the party so neglecting is guilty of negligence *per se.* *Railway Co.* v. *Jones,* 76 Ill. 395; *Railroad Co.* v. *Damerell,* 81 id. 450; *Railroad Co.* v. *Van-Patten,* 64 id. 516; Beach on Contributory Negligence, 193.

It was therefore error for the court to refuse to tell the jury, by the first and third instructions asked by appellant, that appellee's decedent failed to exercise ordinary care to avoid the injury of which he died, if the jury found, from the evidence, that he went upon the crossing in a closed and covered milk wagon, and that he did not stop to look or listen for the approach of the train, and that if he had looked or listened for its approach, he might have seen or heard it. *Railway Co.* v. *Hatch,* 79 Ill. 139; *Railroad Co.* v. *Baches,* 55 id. 379; *Railroad Co.* v. *Godard,* 72 id. 567; *Railway Co.* v. *Jones,* 76 id. 312; *Railroad Co.* v. *Houston,* 95 U. S. 697; *Schofield* v. *Railway Co.* 114 id. 615; 2 Rorer on Railroads, 1031, 1032.

It was error to so modify the first instruction asked by appellant, as to leave it to the jury to say whether or not the deceased failed to exercise ordinary care to avoid the injury from the effects of which he died, if they found that he approached the crossing in question in a covered milk wagon having its sides enclosed, and did not look or listen for the approaching train, and that if he had looked or listened for the approaching train, he might have seen or heard it before driving or going on said crossing. The failure of the person injured to use his physical senses to avoid the injury at a crossing, is not merely evidence of negligence, but is negligence itself. *Railroad Co.* v. *Van Patten,* 64 Ill. 510; *Railway Co.* v. *Hunter,* 33 Ind. 335; Am. Rep. 210; *Railroad Co.* v. *Heilemann,* 49 Pa. St. 60.

Mr. W. C. Kueffner, for the appellee:

It is not necessary to the validity of the ordinance that it should be signed by the mayor. It may have become an ordinance by being passed over his veto, or by his retaining the same, without action, for more than five days. But neither the mayor's signature, nor the vote of the council originally passing it, or passing the same over his veto, or evidence of the fact of his retaining it more than five days, is a part of the

ordinance. They are merely steps or facts necessary to make an ordinance.

Under the certificate, the *prima facie* presumption is, that the ordinance was duly signed by the mayor, or that it has, in one of the other modes prescribed, become a law. *Lindsay* v. *Chicago,* 115 Ill. 122; *Schott* v. *People,* 89 id. 196; *Byars* v. *Mt.Vernon,* 77 id. 467.

Negligence is a question of fact for the jury, and not a question of law. *Railway Co.* v. *Haworth,* 39 Ill. 346; *Railroad Co.* v. *O'Connor,* 119 id. 597; *Railroad Co.* v. *Pennell,* 94 id. 455; *Pennsylvania Co.* v. *Frana,* 112 id. 398; *Pennsylvania Co.* v. *Marshall,* 119 id. 399.

The defendant's first instruction, as asked, would have deprived the jury of their right to determine for themselves the question of negligence, for it sought to have the question determined by the court, which the court very properly refused, and accordingly so modified the instruction as to leave the question where it belonged. Such modification was proper. Negligence is a question of fact for the jury, except where the conclusion of negligence necessarily results from the statement of fact. If, from all the facts, the conclusion of negligence does not result, it is a question for the jury. *Railroad Co.* v. *Pennell,* 91 Ill. 455; *Railroad Co.* v. *O'Connor,* 119 id. 597; *Railroad Co.* v. *Haworth,* 39 id. 346; *Pennsylvania Co.* v. *Frana,* 112 id. 398.

An omission to ring a bell or sound a whistle before reaching the crossing, constituted *prima facie* negligence. *Railroad Co.* v. *Loomis,* 13 Ill. 548; *Railroad Co.* v. *Elmore,* 67 id. 176; *Railway Co.* v. *Elliot,* 98 id. 481.

Mr. Justice Bailey delivered the opinion of the Court:

This was an action on the case, brought by Julia Voelker, administratrix of the estate of Edward Voelker, deceased, against the Terre Haute and Indianapolis Railroad Company, to recover damages for the death of the plaintiff's intestate.

35—129 Ill.

The trial, which was had before the court and a jury, resulted in a verdict in favor of the plaintiff for $3500, and for that sum and costs, the court, after denying the defendant's motion for a new trial, gave judgment for the plaintiff. Said judgment was affirmed by the Appellate Court on appeal, and by an appeal from that court the record is brought here for review.

The declaration contains five counts, but a demurrer having been sustained to the first and second, only the remaining three are brought up by the transcript of the record. Each of said counts alleges that the deceased, at the time he received the injuries of which he died, was riding, with all due care and caution, in a wagon drawn by two horses, along St. Clair avenue in the city of East St. Louis, and that at the point where said avenue crosses the track of the defendant's railroad, the wagon in which he was riding was struck by a locomotive engine running on said railroad, and that the deceased thereby received the injuries of which he soon thereafter died.

The third count alleges a breach by the defendant of its statutory duty to cause a bell of at least thirty pounds weight to be rung or a steam whistle to be sounded on the engine at least eighty rods from the highway, and kept ringing or whistling until the highway was reached, and that by reason of such breach of its statutory duty, said locomotive engine collided with said wagon and inflicted said injuries.

The fourth count alleges an ordinance of the city of East St. Louis limiting the speed at which passenger trains should be run in or through said city to ten miles per hour, and also alleges that the servants of the defendant, at the time the deceased was injured, were running its engine and train, within said city, at a rate exceeding ten miles per hour, to-wit, at the rate of thirty miles per hour, and that in consequence thereof the deceased received said injuries.

The fifth count merely alleges that the defendant, by its servants in charge of said locomotive engine and train, so

negligently and carelessly run and drove the same, that by reason of such negligence and carelessness, said engine run against said wagon and inflicted said injuries, thereby causing the death of the deceased.

The first question presented by the counsel for the defendant arises upon the evidence offered to prove the existence of the ordinance alleged in the fourth count. A document was offered containing what purported to be certified copies of two ordinances of the city of East St. Louis, and said ordinances were thereupon objected to by counsel for the defendant upon the specific ground that they were not signed by the mayor or city clerk of said city. This was the only objection made, and it being overruled, an exception was duly preserved by the defendant. The first of said ordinances provided, among other things, that no locomotive or train of cars should run or be drawn within the limits of said city at a greater rate of speed than six miles an hour, and the second was an amendatory ordinance, providing that no passenger train should run or be driven, within the limits of said city, at a greater rate of speed than ten miles an hour, and no other locomotive or train at a greater rate of speed than six miles an hour. Appended to each was a certificate of the city clerk, under his hand and the corporate seal of the city, that such ordinance was a true and correct copy of the original ordinance of the city as the same appeared of record in his office. The signature of the mayor did not appear at the bottom of either ordinance.

The charter of the city of East St. Louis empowers the city council of said city, by ordinance, to provide for and regulate various matters, and among others, "to direct and regulate the speed of locomotive engines and cars." Said charter also authorized the city council to make, pass, publish, amend and repeal, all ordinances not inconsistent with the constitution of the United States or of this State, for the good government, peace and order of the city and the trade and commerce thereof, that might be necessary and proper to carry into effect the

powers vested by said charter in said city. A subsequent section, and the one upon which the objection now under consideration is based, is as follows:

"All ordinances and resolutions shall, before they take effect, be placed in the office of the mayor, and if he shall approve thereof, he shall sign the same; and such as he shall not approve of, he shall return to the city council with his objections thereto. Upon such return, the vote by which such ordinance or resolution was passed shall be reconsidered; and if, after such reconsideration, a majority of all members elected shall agree, (by the ayes and noes, which shall be entered upon the journal,) to pass the same, it shall go into effect; and if the mayor shall neglect to approve, or object to, or retain any ordinance or resolution for a longer period than five days after the same shall be placed in his office, as aforesaid, the same shall go into effect." Private Laws of 1869, Vol. 1, page 896.

By this section, three separate modes are provided by which an ordinance, after being passed by the city council, may become operative, viz: 1, by the approval of the mayor, evidenced by his signature; 2, by a majority vote of the council on reconsideration after being returned by the mayor with his objections; and, 3, by being retained by the mayor more than five days. The objection offered is merely that the ordinances in question did not appear to have become operative by a particular one of these modes. The fact alleged, viz, that they had not been signed by the mayor, may be admitted, and the conclusion that they have never taken effect by no means follows. A specific objection based solely upon a particular fact is, strictly, a waiver of all objections based upon other facts not specified or relied upon. This rule is based upon the equitable consideration that, if the other objections had been made, it might have been within the power of the party offering the evidence to obviate them. If it had been objected that the ordinances had not gone into effect in either of the modes provided by the charter, the plaintiff might have been able to

show that they had been passed by the council over the mayor's veto, or that they had become operative by his retaining them more than five days without signing them.

But the propriety of the admission of said ordinances in evidence may be placed on other grounds. The signature of the mayor, where he approves an ordinance, is manifestly no part of the ordinance itself. It is merely the evidence of his approval required by the charter. But it is no more a part of the ordinance than are the minutes of the proceedings of the city council in which is recorded the vote by which the ordinance is passed. True, an ordinance can have no validity until it has been passed by the council and then placed in the mayor's office, and afterwards approved and signed by him, or retained without action beyond the prescribed period, or passed over his veto. The ordinance, however, need not bear upon its face the evidence of all or any of these proceedings, except of course where it is signed by the mayor, such signature will necessarily appear.

Possibly if no provision had been made by statute as to the mode of proving the ordinances, it would have been incumbent on the party alleging their existence to prove each of the steps by which they were passed and given effect. Article 7, section 13, of the charter, however, provides as follows:

"All ordinances and resolutions of the city may be proven by the seal of the corporation; and when printed and published in pamphlet or book form, and purporting to be printed or published by the authority of the city council, the same shall be received in evidence in all courts and places without further proof."

Here the proof was made by the corporate seal and a certificate of the city clerk who was the proper custodian of the seal. This was all that was required to establish, at least *prima facie*, the existence of the ordinance and its terms. In *Pendergast* v. *City of Peru*, 20 Ill. 51, it was held, under a similar provision of the charter there in question, that a copy

of the city by-laws certified by the city clerk and verified by the corporate seal, was a literal compliance with the charter, and was properly admitted in evidence. In *Lindsay* v. *City of Chicago*, 115 Ill. 120, where the question arose under the provisions of article 5, section 4, of the general statute for the incorporation of cities and villages, it was contended that the passage of the ordinance could be established only by the production of the journal containing the proceedings of the city council, showing the vote by which it was passed, but it was held that a certified copy of the ordinance, attested by the clerk under the seal of the corporation, was competent evidence of its passage. In *Schott* v. *The People*, 89 Ill. 195, we said: "It is doubtless competent for the Legislature to enact that the simple production of the ordinance or a copy thereof shall be *prima facie* evidence that every step has been taken with reference to it, essential to make it a valid ordinance," and it was held that such was the effect of the section of the general incorporation act above mentioned.

Under these decisions as well as upon principle, it must be held, that the copies of the ordinances in this case, certified by the city clerk and authenticated by the corporate seal, were competent evidence tending to show, that said ordinances had been duly passed by the city council, and that they had gone into effect in one of the modes prescribed by the charter.

The only remaining questions in the case which are open for consideration here, arise upon the instructions to the jury. The discussion, so far as it is presented by the briefs of counsel, relates mainly to the defendant's first instruction which was modified by the court and given to the jury as modified, and to the defendant's third instruction which was refused. The defendant's first instruction was as follows, the modifications consisting in striking out the words inclosed in brackets, and inserting those printed in italics:

"The court instructs the jury, that it is the duty of a person approaching a railroad crossing, to look along the line of the

railroad to see if a train is coming, or to listen, or to use any other reasonable means of informing himself of an approaching train, before going on such crossing, [and if he fails or omits to do so, such omission on his part is negligence in itself,] and if the jury believe, from the evidence in this case, that the deceased, Edward Voelker, approached the crossing in question in this case in a covered milk wagon which had the sides thereof closed, and that he did not look or listen for the approaching train, and that if he had looked or listened for the approach of said train he might have seen or heard said train before driving or going on said crossing, [then he] *and that in so doing he* failed to exercise ordinary care to avoid the injury which he received, [and] *then* the plaintiff can not recover, even though the jury may further believe, from the evidence, that the defendant's servants or employes failed to ring the bell or sound the whistle as required by law, and were running said train at a greater rate of speed than ten miles an hour."

The defendant's third instruction which was refused was as follows :

"The court instructs the jury, that it is the duty of a person approaching the crossing of a railroad over a public highway, to listen and to look both ways along the railroad track for the approach of the railroad train, before going upon the railroad, and if he goes upon the track without taking such precautions to guard against an accident and sustains an injury in consequence of his failure to take such precautions, he can not recover, and if the jury believe, from the evidence, that the said deceased, Edward Voelker, went upon the crossing of the defendant's railroad at St. Clair avenue without looking or listening for the approach of the train, and received the injury from which he died, then the plaintiff can not recover, and the verdict should be for the defendant."

The proposition raised by both of these instructions, and upon which the Circuit Court ruled against the defendant,

was, that going upon a railway track at the point where it crosses a highway or street, without looking or listening for approaching trains, is negligence *per se*, and that such conduct, in case of an injury at such crossing, constitutes such contributory negligence as will bar a recovery therefor. It has been the uniform doctrine of this court, that negligence is ordinarily a question of fact for the jury. Doubtless there may be conduct so clearly and palpably negligent, that all reasonable minds, without hesitation or dissent, would so pronounce it. When that is so, the inference of negligence may properly be said to be a necessary one and such conduct may be treated as negligent *per se*. But as said in *Cumberland Valley R. R. Co.* v. *Maugans*, 61 Md. 53 : "When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence can not be determined until one or the other of these conclusions has been determined by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they can not be decided upon by the court. Negligence can not be conclusively established by a state of facts upon which fair-minded men may well differ." See also *B. & O. R. R. Co.* v. *Owlings*, 65 Md. 502.

It has frequently been said in judicial decisions in this State and elsewhere, that it is the duty of persons approaching a railway crossing, to look and listen before going upon the track, and that their failure to do so is negligence, but it will be found generally, though not uniformly, on examining the cases where such language occurs, that it has been used in discussing the duty as to care and caution in approaching a railway crossing, viewed as a mere question of fact, and not as a question of law. It is doubtless a rule of law that a person approaching a railway crossing is bound, in so doing, to exercise such care, caution and circumspection to foresee danger and avoid injury as ordinary prudence would require, having in view all the known dangers of the situation, but

precisely what such requirements would be, must manifestly
differ with the ever varying circumstances under which such
approach may be made. Ordinarily of course the diligent use
of the senses of sight and hearing is the most obvious and
practicable means of avoiding injury in such cases, but occasions
may and often do arise where the use of those senses
would be unavailing, or where their non-use may be excused.
The view may be obstructed by intervening objects or by the
darkness of the night. Other and louder noises, as is often
the case in a city, may confuse the sense of hearing and render
its use impracticable. The railway company, by its flagman
or other agent or agency, may put the person off his
guard and induce him to cross the track without resorting to
the usual precautions. The duty may be more or less varied
by the age, degree of intelligence and mental capacity of the
party, and by a variety of other circumstances by which he
may be surrounded. It follows that no invariable rule can be
predicated upon the mere act of failing to look or listen, but
a jury, properly instructed as to the legal duty in respect to
care and caution, of a person approaching a railway crossing,
must draw from such act, in connection with all the attendant
circumstances, the proper conclusion as to whether he is
guilty of negligence or not.

Mr. Bishop, in his recent treatise on Non-Contract Law,
sec. 1043, after referring to the decisions which seem to hold
that the duty to look and listen is an absolute one, and that
its omission is negligence *per se*, says: "But it is believed
that most courts more accurately regard this sort of matter
as mere evidence, like any other in the case; submitting all,
with proper instructions, to the jury, yet with the exceptions
recognized in the general law of negligence. To omit looking
and listening where neither can do any good—as, where the
track is hidden from sight, and other sounds drown the noise
of the cars—is not contributory negligence. And there are
other circumstances in which the rule of looking and listen-

ing can not, in the nature of this sort of thing, be inflexible. Therefore, to go upon the track in disregard of it is not necessarily and as a question of law negligence."

In *T. & P. Ry. Co.* v. *Chapman*, 57 Texas, 75, it was held that a person approaching a railway track at a road crossing is bound to use such precautions as a prudent man would resort to under like circumstances, but any attempt by the court to prescribe the precise thing he should do in exercising such caution, would be an invasion of the province of the jury, by charging on the weight of evidence. In *Lavarenz* v. *C., R. I. & P. R. R. Co.* 56 Iowa, 689, the court, after reviewing various authorities, says: "These and many other cases which might be cited, establish the doctrine beyond question, that a person is not necessarily and as a question of law, negligent, in going upon a railroad track without looking and listening for approaching trains." In *Plummer* v. *Eastern R. R. Co.* 73 Me. 591, it is held that the fact that a person who, in attempting to cross a railroad, does not at the instant of stepping on it, look to ascertain if a train is approaching, is not conclusive of a due want of care on his part.

The foregoing authorities are entirely in harmony with repeated decisions of this court, but as the contrary doctrine is very strenuously insisted upon by counsel for the defendant in this case, we have been disposed to discuss the question more at length than the condition of the decisions in this State would otherwise have seemed to demand. In *Pennsylvania Co.* v. *Frana*, 112 Ill. 398, the trial court refused to instruct the jury that it was the duty of a person, before attempting to cross a railway track, to stop if necessary, and look and listen for the approach of trains, before entering upon such track, and that if by such precautions he could have discovered the approach of the defendant's train and avoided the injury, he could not recover. In affirming the judgment we said: "It is no doubt true that it is the duty of a person about to cross a railroad track, to approach cautiously, and

endeavor to ascertain if there is present danger in crossing; and where the railroad tracks and crossings are so situated that the approach of the train can not be seen, it may be the duty of a person about to cross to stop and look, to ascertain if the train is coming; but it is always a question of fact for the jury to determine, from the evidence, whether the person injured has exercised proper care and caution in crossing a railroad track, and not a question of law. It is the province of the jury to determine whether the plaintiff was guilty of negligence and not for the court to tell the jury that certain facts constituted negligence."

In *C. & E. I. R. R. Co.* v. *O'Connor*, 119 Ill. 586, in discussing the same proposition, we said: "It is only when the conclusion of negligence necessarily results from the statement of fact, that the court can be called upon to say to the jury that a fact establishes negligence, as a matter of law. If the conclusion of negligence, under the facts stated, may or may not result, as shall depend on other circumstances, the question is one of fact for the jury." See also, *C. & A. R. R. Co.* v. *Pennell*, 94 Ill. 448; *Schmidt* v. *C. & N. W. Ry. Co.* 83 id. 405; *C. & N. W. Ry. Co.* v. *Moranda*, 108 id. 576.

It is insisted that if the court ruled correctly in modifying the defendant's first and in refusing its third instruction, it, by the same rule, must be held to have committed an error in giving to the jury the plaintiff's third instruction, which held, in substance, that if the defendant omitted to perform its statutory duty in relation to ringing a bell or sounding a whistle on its engine, such conduct constituted a *prima facie* case of negligence. We are unable to concur with counsel in this view. A statute commanding an act to be done, creates an absolute duty to perform such act, and the duty of performance does not depend upon and is not controlled by surrounding circumstances. Non-performance of such statutory duty, resulting in injury to another, may therefore be pronounced to be negligence as a conclusion of law.

Several questions of fact were, at the instance of the defendant, submitted to the jury for special findings, one of which was modified by the court and submitted as modified. The action of the court in making such modification is assigned for error. Said question was as follows, the modification consisting in the insertion of the words in *italics:*

"Could the deceased, Edward Voelker, *if he had used ordinary care and diligence,* have seen or heard the defendant's train approaching the crossing over the St. Clair avenue in East St. Louis, if he had looked or listened for its approach to said crossing, before he drove or went on to said crossing, at the time he received the injury from the effect of which he died?"

To this question the jury returned a negative answer. It is clear that the question, as proposed by the defendant, called for a finding as to mere evidentiary facts, none of which, if found, could have been controlling. There was no error therefore in refusing to submit it to the jury in that form. Whichever way the jury might have found, their finding could have had no effect upon the general verdict. On this point we refer to what we have more fully said in our discussion of the same proposition in *C. & N. W. Ry. Co.* v. *Dunleavy, ante,* 132.

The residue of the propositions discussed by the Appellate Court in its opinion do not seem to be insisted upon by the defendant's counsel here, and we therefore infer that, as to those questions, they acquiesce in the rules laid down by that court. None of the assignments of error insisted upon here are in our opinion sustained, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*