# LAKE ERIE & WESTERN RAILROAD COMPANY

## V.

## RICHARD MORAIN.

*Railroads—Negligence—Personal Injuries—Failure to Stop Reasonable Time—Jerk of Train—Evidence—Instructions—Special Interrogatories—Practice—Verdict.*

1.   A verdict is final where the evidence was conflicting unless errors of law intervened of such gravity as will require a reversal.

2.   An instruction for plaintiff omitting the qualification that it was necessary that he should have exercised ordinary care, should not be given in an action for the recovery of damages for personal injuries alleged to have been occasioned by the negligence of another.

3.   An instruction not based upon the facts should be refused.

4.   Likewise an instruction setting forth that an assumed state of facts would bar a recovery.

5.   Interrogatories calling for a finding upon mere evidentiary or probative facts, and not upon the ultimate facts upon which the case must be decided, should be refused.

6.   In an action brought to recover from a railroad company for personal injuries alleged to have been occasioned through its negligence, this court holds that the erroneous giving of a defective instruction in behalf of the plaintiff was cured by the giving of others, that several instructions asked by the defendant were properly modified by the trial judge, and declines to interfere with the verdict for the plaintiff.

[Opinion filed May 24, 1890.]

APPEAL from the Circuit Court of McLean County; the Hon. A. SAMPLE, Judge, presiding.

Messrs. A. E. DE MANGE, and W. E. HACKEDORN, for appellant.

Messrs. BENJAMIN & MORRISSEY, for appellee.

WALL, J.   This was an action on the case by appellee against appellant to recover damages for injuries sustained while attempting to alight from a train.   The plaintiff obtained a verdict and judgment thereon for $5,000.

L. E. & W. R. R. Co. v. Morain.

The principal question discussed in the brief is, whether the evidence sustains the verdict. The ground of negligence relied on is that the train did not stop long enough to enable the plaintiff to get off safely, and incidental to this that it started forward with a slight jerk, whereby the plaintiff, while attempting to alight, was thrown down and so injured that it was necessary to amputate his leg just above the ankle. The train had an unusual number of passengers because of a fair that day held at Saybrook, and two extra cars were provided for the occasion.

Analyzing the question of negligence as presented by the evidence, it will be seen that the chief inquiry was, how long did the train stop? did it stop the usual time? did it stop long enough to allow plaintiff a reasonable opportunity to alight?

To this distinct point both parties mainly directed their attention, realizing, no doubt, that it was vital, if not controlling, and there is hopeless conflict herein. The plaintiff, by his own testimony and that of other witnesses, made it appear quite plainly that the interval was too short, and that to this the injury was clearly attributable.

These witnesses, eight or nine of them, do not all testify in one groove nor to one set of facts, but each gives his or her experience and observation on the occasion, and it· may be said that the mass of their testimony is harmonious in the main, and substantially sustains the plaintiff's allegation.

On the other hand there is a mass of testimony fully as great, and so far as shown by the record apparently as fair, reasonable and consistent, all tending to the opposite conclusion. Either array would amply support the side on which it appears, but when they are opposed there is a conflict which the verdict must conclusively settle, unless errors of law have intervened of such gravity, as, according to established rules, will require a reversal. We consider it not necessary to set out the evidence, and have, therefore, given this brief statement of the impression produced by a careful reading of it, as contained in the abstract.

The first instruction given for the plaintiff is faulty in

omitting the qualification that it was necessary that the plaintiff should have exercised ordinary care as a condition essential to recovery, and unless the defect is cured in other instructions, the error is fatal.

But it will be found that in the next instruction the qualification or condition is properly stated, and so it is in the sixth and in the second and third modified instructions given on behalf of the defendant. The jury by their answers to the second and fifth special interrogatories, distinctly find that by the use of ordinary care the passengers could not all alight safely, and in particular that plaintiff could not. We think it unreasonable to suppose that the imperfection in the first instruction misled the jury, and induced them to find for plaintiff, regardless of whether he used ordinary care. Unaccustomed as a jury may be to consider legal questions and to draw nice distinctions, and to apply legal rules to evidence, it is not probable that this important feature of the case was misunderstood. If they read all the instructions and reflected upon the significance of the special interrogatories in this respect, they could not have failed to comprehend the point.

They have indeed found specially that the plaintiff by the exercise of ordinary care could not have safely alighted, and so it affirmatively appears they considered the question. In the case of Willard v. Swansen, 126 Ill. 381, the plaintiff had obtained an instruction which was defective in the same respect as this one. The Supreme Court held it to be clearly deficient, but said that the error was not fatal, because in another instruction given for plaintiff the rule was well stated, as it was also in several instructions given for defendant, and so the court concluded it was incredible that the jury were misled on that branch of the law, and affirmed the judgment notwithstanding such error. We feel constrained to make the same disposition of the objection here presented.

The defendant offered to prove that the plaintiff had got out of the car at Arrowsmith, the preceding station, and remained on the platform until the train started, and then ran along and climbed on the moving train, but the court refused to admit the proof. On cross-examination, the plaintiff had

denied that he was out of the car at that station.   This denial
was not a matter of such relevance as to make it a proper
subject for contradictory evidence for purposes of impeach-
ment, at least not necessarily so, nor would the fact be com-
petent as primary evidence.   If admitted as primary evidence
it would be for the purpose of showing that at the station
referred to, plaintiff was guilty of a species of negligence
and folly, from which the jury would be asked to infer that
he was doing the same thing when he was hurt.

In P. & P. U. Ry. Co. v. Clayberg, Adm'r, 107 Ill. 644, it
was held that the trial court properly rejected evidence
offered by the defendant, that the deceased was in the habit
of jumping on moving trains, because, as was said, the effect
of the proposed evidence was merely to raise a collateral and
immaterial issue.

We regard the evidence here offered as too remote and
speculative and tending to raise a collateral issue, and there-
fore properly rejected, and when it is considered that there
is really nothing substantial in the proof to show that plaintiff
was so negligent when he was hurt, we are of opinion that
the offered proof, even if admissible, could have availed nothing.
It is complained that the court erred in modifying several
instructions asked by the defendant.   As to the first and
second, so modified, the amendment is merely verbal, and as
to the fourth, the alteration made no substantial change in the
meaning, but rendered it more clear and definite.   As to the
third, the change consisted in striking off the final clause,
which was in substance a statement of the statutory provision
making it unlawful for any person or minor, except it be
his business to do so, to climb, jump, step, stand upon, cling
to, or in any way attach himself to any car, either standing
or moving, and any person so conducting himself shall
have no cause of action for injury thereby received, etc.
There was nothing in the evidence on which such an instruc-
tion could be predicated.   It is true the defendant advanced
the theory that plaintiff, after he had once safely alighted,
continued to hold on to the car and ran along side of it after
it started, but the non-liability of defendant for an injury

received in consequence of such supposed act of the plaintiff, was clearly presented in the fifth instruction given for defendant.

Hence, the court properly struck this clause out of the third instruction, and properly refused to give another instruction containing the same proposition in slightly different terms. The substance of the second refused is contained in the fourth as modified, and also in the eighth, which was given as asked.

The third refused was not based on the facts, and was properly refused for that reason. This was not the case of a train failing to stop at a station as suggested in the instruction, but of a train which made an insufficient stop, as alleged, not sufficient to enable a passenger, who was attempting to alight, to do so with safety. The fourth instruction refused was faulty in asserting non-liability, if the plaintiff remained on the car platform for fifteen seconds or any other period without attempting to get off until the train was in motion, thus in effect saying to the jury that the assumed facts constituted such want of care as would bar a recovery, which was a question for the determination of the jury, when all the facts in that connection were taken into account. It is also urged that there was error in refusing to submit to the jury the following questions:

3d. How long did defendant's train stop at Ellsworth?

4th. Did plaintiff alight from the platform of the car to the station platform, and then endeavor to regain the car platform or run along the station platform with the train?

7th. Did plaintiff, with his brother and the witness Vandervoort, stand on the platform of the car or elsewhere on the train after it had stopped at Ellsworth, without attempting to get off until it had started again?

8th. Did plaintiff receive his injury in attempting to get off the train while it was in motion?

9th. Did any of the trainmen consent to or encourage plaintiff's attempt to leave the train while it was in motion?

In C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132, the Supreme Court construed the statutory provision requiring

the submission to the jury of interrogatories, to be by them answered with regard to material questions of fact involved in the case on trial, and it was held upon an exhaustive consideration of the subject that the interrogatories to be so submitted, must relate to the ultimate facts and not such evidentiary facts as might, more or less, tend to establish the ultimate facts upon which the rights of the parties directly depend.  The court there say:

" Not only does this conclusion follow from analogy to the rules relating to special verdicts, but it arises from the very nature of the case.

" It would clearly be of no avail to require the jury to find mere matters of evidence, because, after being found, they would in no way aid the court in determining what judgment to render.

" Doubtless a probative fact, from which the ultimate fact necessarily results, would be material, for there the court could infer such ultimate fact as a matter of law; but where the probative fact is merely *prima facie* evidence of the fact to be proved, the proper deduction to be drawn from the probative fact presents a question of fact, and not of law, requiring further action of the jury, and it therefore can not be made the basis of any action of the court.

" Requiring the jury to find such probative fact, is merely requiring them to find the evidence and not the facts, and results in nothing which can be of the slightest assistance to the parties or to the court, in arriving at the proper determination of the suit."  See, also, T. H. & I. Co. v. Voelker, 129 Ill. 540.

Applying the rule thus stated to these interrogatories, it will be seen they were properly refused, since they are all obnoxious to the objection that they call for a finding upon mere evidentiary or probative facts, and not upon the ultimate facts upon which the case must be decided.

It is objected that plaintiff's counsel was allowed to put leading questions to the witness, Vandervoort.  In such matters much must be left to the discretion of the trial court, and we see nothing in the action complained of here, calling for special notice.  It can not be said the discretion was unduly exercised, to the prejudice of the defendant.

No other objections are presented in the argument of appellant. The judgment will be affirmed.

*Judgment affirmed.*