## Chicago, Peoria & St. Louis R. R. Co. v. Charlotte Woolridge, Adm'x.

1. DAMAGES—*To Next of Kin, by a Death Caused by Negligence.*—In order to permit the next of kin to recover more than nominal damages, in a suit by an administrator to recover for the wrongful killing of his intestate, the proof must show that they were supported, in whole or in part, by the deceased, or that he was bound by law to support them because they were in a state of dependence.

2. SAME—*Death Caused by Negligence—Evidence to be Considered.*—In a suit by an administrator to recover for the wrongful killing of his intestate, it is proper to admit evidence to show that a son of the deceased, over twenty-one years of age, was at the time his father was killed, so crippled with rheumatism in his right hip that he was unable to work and earn a living, and that he was dependent on his father for his support.

3. VERDICTS—*When They Should Stand.*—Unless a verdict is clearly contrary to the evidence, and can be considered only as the result of passion, prejudice or a palpable misapprehension of the facts, it is not the province of a court of appeal to interfere. If the record contains evidence upon which the finding can be fairly and reasonably based, it should not be set aside though there is other and adverse testimony which, as it appears in the record, seems to a court of appeal to preponderate.

4. RAILROADS—*Running Train Backward Where Many Persons are Passing.*—The dictates of common prudence should admonish the employes of a railroad company that to run a train backward at a speed of eight or ten miles an hour, at a place where many persons are passing

to and fro, and there is much confusion and noise, is an exceedingly haz-
ardous thing to do.

4.  SAME—*Failure to Look and Listen Not Negligence Per Se.*—The
failure of a person going upon a railroad track to look and listen for an
approaching train, is not negligence *per se;* it is for the jury, under
proper instructions and considering all the attending circumstances, to
decide whether such a failure is negligence or not.

5.  SAME—*Presumption as to Movements of Persons On or Near Track.*
—Whether the presumption obtains that a man will not go on or will
get off a railroad track in front of an approaching train, depends upon
the circumstances surrounding the parties at the time. Such a presump-
tion does not exist as an abstract proposition of law.

6.  INSTRUCTIONS—*An Instruction as to Damages in a Personal In-
jury Case Sustained.*—An instruction in a personal injury case, telling
the jury that if the evidence shows that the person injured was, at the
time of the accident, in the exercise of due care for his own safety, that
the defendant was guilty of the negligence charged in the declaration,
and that such negligence was the cause of the injuries complained of,
" then the plaintiff is entitled to recover in such sum as, in your judg-
ment, the evidence warrants," is not subject to the objection that it
places no limitation on the damages which may be recovered.

**Trespass on the Case,** for personal injuries. Error to the Circuit
Court of Sangamon County; the Hon. ROBERT B. SHIRLEY, Judge, pre-
siding. Heard in this court at the May term, 1897. Affirmed. Opinion
filed December 2, 1897.

WILSON & WARREN, attorneys for plaintiff in error.

S. H. CUMMINS, attorney for defendant in error; CONKLING
& GROUT, of counsel.

MR. JUSTICE GLENN DELIVERED THE OPINION OF THE COURT.

This was an action on the case by the defendant in error,
as administratrix, to recover damages from plaintiff in error
for negligently causing the death of her husband, John A.
Woolridge. Upon a trial of the cause the issues were found
for defendant in error, and her damages assessed at three
thousand dollars. A motion for new trial was overruled by
the court and judgment rendered upon the verdict.

The plaintiff in error operated a branch track which runs
along and parallel with the Chicago & Alton branch
track, both going into the Illinois State Fair Grounds, at

the southeast corner thereof, the same only being operated during the time the Illinois State Fair is being held, when they only operate the road for the purpose of conveying passengers to and from the fair grounds. Since said railroad companies have been operating their tracks as aforesaid, the deceased, John A. Woolridge, who had resided in the city of Springfield for many years, was employed by the Chicago & Alton Railroad Company; not as a regular switchman or flagman for the company, nor had he ever been in the employment of the Chicago & Alton Railroad Company except for the one week that the Illinois State Fair was held. At this time he had been employed by the Chicago & Alton Railroad Company as a flagman for that company, and stationed at and near to the place where the said Chicago & Alton Railroad Company enters the fair ground. He had only been on duty one day and a half when he was struck by the train of plaintiff in error and killed. The plaintiff in error also had a flagman stationed at the south side of Sangamon avenue, a distance of about one hundred feet from where the deceased was, and for the purpose of flagging trains on its road. These two flagmen were all that were there for that purpose.

The facts further are that it was Soldiers' Day, Tuesday; that it was one of the main entrances to the State Fair Grounds, both for foot passengers and vehicles; that there were many stands, vendors of various articles, both inside of the Illinois State Fair Grounds and the outside; that trains were constantly passing and repassing in and out of said fair grounds; that just a moment before the deceased was struck he had been on the east side of the tracks, had eaten his dinner, picked up his flag and started to his post of duty.

When he arrived there he stopped about eighteen feet south of the gate entrance of the fair grounds and flagged for the Chicago & Alton train, which was at that time leaving the fair grounds for the city, and that while he so flagged for that train, with his attention directed to the safety of travel from the place where he was stationed as flagman, he was struck from behind on the head by a train of the

plaintiff in error and received injuries from which he shortly thereafter died. The only experience the testimony in this case shows he had, was the one and a half days' previous work; that he had each year flagged for the Chicago & Alton Railroad Company for the six days while the fair was in session.

The court below allowed defendant in error to prove over the objection of plaintiff in error, by Clarence Woolridge, who was over twenty-one years of age, that at the time his father was killed he was so crippled with the rheumatism in his right hip that he was unable to work and earn a living and was dependent upon his father for his support. The admission of this proof it is claimed was error. The gravamen of this action as defined by the statute is, in every such action, the jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person, not exceeding the sum of $5,000.

When the relation of husband and wife or parent and child exists the law presumes pecuniary loss from the fact of death. Holton v. Daly, Administrator, 106 Ill. 131; City of Chicago v. Scholten, 75 Ill. 468; Chicago & N. W. R. R. Co. v. Swett, 45 Ill. 197.

Where the relation of parent and child exists, although the law presumes pecuniary loss from the fact of death, yet these damages may be enhanced by evidence of the mental and physical capacity of the child to be of service to his father in his business, and his habits of industry and sobriety, where he is old enough to have established a character; these are elements to be considered in assessing the pecuniary loss sustained. City of Chicago v. Scholten, *supra.*

In case the relation of husband and wife exists the same rule obtains in estimating the pecuniary loss sustained by the wife. The husband's capacity and ability to earn money, his habits of industry and sobriety, the amount of his usual earnings, and that the deceased was her husband in life, and that they had minor children whom he was by law bound to support and who usually shared his income, are proper

matters of proof to be considered in fixing the damages. Chicago & N. W. R. R. v. Moranda, 93 Ill. 302, 304.

Where suit is brought by the next of kin who are collateral kindred of the deceased, and have not been receiving from him pecuniary assistance, and are not in a situation to require it, only nominal damages can be recovered, no difference how close such collateral relationship may be. But if on the other hand, the next of kin consists of collaterals whom the deceased in life was not bound to support, unless in a state of dependence, and who have received pecuniary aid from him in whole or in part for their support, there is no difference how remote the relationship, there has been a pecuniary loss for which damages must be given. C. & N. W. R. R. Co. v. Swett, *supra;* Chicago & A. R. R. Co. v. Shannon, 43 Ill. 338; City of Chicago v. Scholten, *supra;* C. & N. W. R. R. Co. v. Moranda, *supra.* It therefore follows, for the next of kin to recover more than nominal damages, the proof must show the next of kin were supported in whole or in part by the deceased, or that he was bound by law to support them because they were in a state of dependence. This is the character of the evidence complained of. The witness testifies that at the time of his father's death, he was entirely dependent on him for his support; this state of his dependency was created by his physical condition. Without this state of dependency his father would not have been bound by law to support him, as he was over twenty-one years of age. His father being bound to support him, any fact or circumstance which tended to establish the existence of this state of dependency was material and proper. Without this, only nominal damages could be recovered. Even if this evidence were improper, the admission of it is not error for which this case should be reversed. It could only affect the amount of the verdict, and as the amount is not excessive, the verdict of the jury should not be disturbed for this reason.

It is claimed on the part of plaintiff in error that the verdict of the jury is contrary to the manifest weight of the evidence. To maintain this contention we are referred to

the case of Chicago & N. W. R. R. Co. v. Sweeney, 52 Ill. 325, as being in all respects like the case at bar.

"In that case the deceased, with his shovel in hand, with a cap upon his head drawn closely down over his ears, and without looking to the right or left or behind him, stepped upon the track of the Ft. Wayne road, a few feet north of the point where the ' Y ' joins it, and while cars pushed by an engine were being backed over the ' Y ' onto the track of the road, was run over and killed, deceased having his back to the car when he was killed." In this case the deceased was, at the time he met his death, surrounded by a very different set of circumstances. The place was at the intersection of two public streets, at which place the plaintiff in error and the C. & A. R. R. Co. had parallel tracks running over such intersection into the Illinois State Fair Grounds. The deceased was the flagman for the C. & A. road. The C. & A. train was coming out of the fair grounds; plaintiff in error's train was backing in, with an engine with two or three passenger cars attached, at a speed of from eight to ten miles an hour. The place where deceased was struck was some fifteen or eighteen feet from the gate or entrance to the fair grounds, where the cars or persons on foot and in vehicles passed in and out. At this time there were a number of persons passing in and out. In close proximity to this place there were two saloons, vendors of various kinds of merchandise, and fakirs, who contributed to make considerable noise. Just the instant before the deceased was struck he was flagging back a man who was about to cross the C. & A. track on which a train was coming out of the fair grounds. As this train passed, he, being between the tracks, stepped back a step or two toward the track of the plaintiff in error, and the train of plaintiff in error struck him and killed him, without his knowing it was approaching.

While flagging the man back who was approaching the C. & A. track, there were several calls "Look out!" These, no doubt, the deceased did not hear, or if he did hear them, supposed they were addressed to the man he was flagging.

That this case is not like the Sweeney case, *supra*, is quite apparent to us.    The dictates of common prudence should have admonished the employes of plaintiff in error that to run a train backward, when so many persons were passing to and fro, and where there was so much confusion and noise, and also when meeting a train on the C. & A. road, at a speed of from eight to ten miles an hour, was an exceedingly hazardous thing to do.    The train should have been slowed up and been under the complete control of the employes of plaintiff in error at this place.

It is a well settled rule in this State, that unless the verdict of the jury is clearly against the evidence, and can be considered only as the result of passion, prejudice, or a palpable misapprehension of the facts, it is not the province of the court for that reason to interfere.    If the record contains evidence upon which their finding can be fairly and reasonably based, we are not at liberty to set it aside, though there is other and adverse testimony which, as we read it in the record, seems to us rather to preponderate.    Chicago & A. R. R. Co. v. Shannon, Adm'r, 43 Ill. 338.

It is claimed that the refusal by the court to give the thirty-sixth, thirty-eighth and thirty-ninth instructions of plaintiff in error was error.    These instructions announce the doctrine that it was the duty of the deceased to look and listen for the approaching train, and if he failed to do this, or take any means whatever to ascertain whether he could safely enter upon the track, then he could not recover. The rule laid down in these instructions amounts simply to this: the failure to look and listen for the approaching train is negligence *per se*.    This view is not sustained by the authorities.

In the case of Terre H. & I. R. R. Co. v. Voelker, 129 Ill. 540, it is said: "It is doubtless a rule of law that a person approaching a railway crossing is bound in so doing to exercise such care, caution and circumspection to foresee danger and avoid injury as ordinary prudence would require, having in view all the known dangers of the situation; but precisely what such requirements would be must manifestly

differ with the ever-varying circumstances under which such approach may be made. Ordinarily, of course, the diligent use of the senses of sight and hearing is the most obvious and practicable means of avoiding injury in such cases, but occasions may and often do arise where the use of those senses would be unavailing or where their non-use may be excused. The view may be obstructed by intervening objects or by the darkness of the night. Other and louder noises, as is often the case in a city, may confuse the sense of hearing and render its use impracticable. The railway company, by its flagman or other agent or agency, may put the person off his guard and induce him to cross the track without resorting to the usual precautions. The duty may be more or less varied by the age, degree of intelligence and mental capacity of the party, and by a variety of other circumstances by which he may be surrounded. It follows that no invariable rule can be predicated upon the mere act of failing to look or listen, but a jury properly instructed as to the legal duty in respect to care and caution of a person approaching a railway crossing must draw from such act, in connection with all the attending circumstances, the proper conclusion as to whether he is guilty of negligence or not." In this case the learned justice who wrote the opinion cites, among many other authorities sustaining the view above taken, the case of Plummer v. Eastern R. R. Co., 73 Me. 591, in which that court said it is held that the fact that a person, attempting to cross a railroad, does not at the instant of stepping on it, look to ascertain if a train is approaching, is not conclusive of a due want of care on his part.

In the case at bar, the noise of the outgoing train on the C. & A. track, and other and louder noises than that of plaintiff in error's train, and the fact that the deceased had his attention riveted on the man who was attempting to come on the C. & A. track and flagging him back lest he would suffer a serious injury or be killed, were excuses for the deceased for the non-use of his senses of sight and hearing. These instructions were properly refused.

It is contended it was error for the court to refuse instructions numbered twenty-one, twenty-two, twenty-seven, thirty-seven and forty-one asked by plaintiff in error. These instructions all relate to what presumption may be entertained by the employes of plaintiff in error with reference to a man crossing or going onto, or getting off a railroad track when a train is approaching. When the presumption obtains that a man will not go on, or will get off a railroad track in front of an approaching train, depends upon the circumstances surrounding the parties at the time of the accident. It does not exist as an abstract proposition of law. These instructions do not fall within the rule announced in the case of Chicago, R. I. & P. R. R. Co. v. Austin, 69 Ill. 426. In this case the attention of the jury by the instruction was called to the circumstances surrounding the parties at the time. If the instructions complained of had been given they could only have confused and misled the jury. They were therefore properly refused.

It is claimed that the court below erred in not giving plaintiff in error's nineteenth, twentieth and fortieth instructions.

These instructions are liable to the same criticism as plaintiff in error's refused instructions numbered thirty-six, thirty-eight and thirty-nine, and for the same reasons should have been refused.

The tenth and thirteenth instructions asked by plaintiff in error, it is contended, should have been given. What there is in these instructions as to the place being one of extraordinary danger where the collision took place, and the care and caution that should have been exercised by the deceased, were fully covered by other instructions given for plaintiff in error. In fact these were the only grounds these two instructions covered, and there is no reason why they should have been given.

The refusal to give plaintiff in error's refused instruction number twenty-three is assigned for error; substantially what is covered by this instruction was more clearly and fully stated in an instruction given for plaintiff in error.

It is contended the refusal of plaintiff in error's refused instruction number sixteen was error. This contention, we think, is not well taken. What there is in this instruction, well stated, is contained in plaintiff in error's fourth given instruction, and others given on behalf of plaintiff in error.

We have examined all the refused instructions to which our attention has been called by counsel for plaintiff in error in their brief, and as there are others contained in their assignment of errors to which no reference has been made, as to these, we take it, the assignment of error is waived.

Counsel for plaintiff in error assign for error the giving of defendant in error's first instruction, which is as follows:

" 1. If the jury believe from the evidence in this case that at the time the deceased was struck by defendant's train, he was himself in the exercise of due care and caution for his own safety, and that the defendant was guilty of the negligence charged in the declaration, and that such negligence was the cause of the death of the deceased, then the plaintiff is entitled to recover in such sum as in your judgment the evidence warrants."

It is objected by plaintiff in error that this instruction places no limitation whatever on the damages which might be recovered.

We do not think this objection to the instruction complained of is tenable. The recovery was limited by the instruction to such sum as in their judgment was warranted by the evidence. The instruction was quite different from the one referred to by counsel in the case of City of Chicago v. Scholten, 75 Ill. 468. In that case the jury were told, in finding for plaintiff, they should assess the damages at such sum as will, in the judgment of the jury, compensate the plaintiff and those in whose interest he sues for the loss of the deceased.

In the case at bar, the jury are limited as to the amount warranted by the evidence. Even if this instruction were not accurately correct, the error is clearly cured by defendant in error's second instruction, in which the jury are told they are limited in assessing damages to such sum, if any-

thing, as the jury may deem a fair and just compensation with reference to the pecuniary injury, if any, resulting from such death, to the wife or next of kin of such deceased person. The amount of the judgment for the defendant in error, $3,000, indicates there were no damages assessed for affliction or solace.

From a careful examination of the record in this case, we think the verdict of the jury is not the product of passion or prejudice, but that the damages assessed are fair and reasonable. Therefore the judgment of the Circuit Court is affirmed.