Myers et al. *v.* Walker.

# HENRY MYERS *et al.*

## *v.*

# CHARLES WALKER.

31   353
26   72
31   353
125  129
31   353
p90a ²640
31   353
f192 ¹ 18

1. CHANGE OF VENUE — *need not be granted when the reason ceases.* When the reasons for a change of venue cease to exist, the necessity and the right to a change also cease.

2. So, where an application was made for a change of venue in a cause, upon the ground that the judge then presiding was prejudiced against the party so that he could not obtain a fair trial, and the application was denied, the cause was tried in the same court at a subsequent term, before another judge to whom no objection was made. It was held there was no force in the objection that the application had been denied.

3. WITNESS — *competency — interest.* Where a surviving partner institutes a suit in regard to the partnership concerns, the administrator of the deceased partner is not a competent witness on behalf of the plaintiff, although he may release all his interest in the suit, because if the party so calling him should be defeated he would have a right to pay the costs out of the partnership effects, and thus diminish the assets which would come to the hands of the witness as administrator. To that extent he would have an interest in the result of the suit, and therefore incompetent, notwithstanding his release.

4. CONTRACTS. Where one employs a person to purchase corn for him, and advances money for that purpose, he cannot recover back the money advanced and also the value of the corn purchased with such money.

5. It is none the less a compliance by the party thus employed, with his contract to purchase corn for his employer, because he did not pay for the corn with the identical money advanced to him for the purpose.

6. BAILEE — *degree of care required.* A warehouseman who receives the grain of another for the purpose of storage, is only bound to ordinary care in its preservation.

7. But where a warehouseman purchases grain for another, and has it in store, he takes the risk of any loss that may occur, until such delivery as will pass the title to the party for whom the grain was bought.

8. WAREHOUSEMAN'S RECEIPT — *construction.* A warehouseman "received in store from Walker & Kellogg, and subject to their order, and free of all charges on board their boats, or any boats they may send for the same, thirty thousand bushels shelled corn." *Held,* that the warehouseman was bound to store the corn free of charge, only for a reasonable time. And if boats were not sent for the corn within such time, he would be entitled to compensation for storage, and for any extra labor in delivery occasioned by the delay.

9. NOTICE — *when required.* The right to storage in such case would, however, it seems, only accrue after notice to the owner to remove the corn.

10. COMMISSION FOR BUYING—*how forfeited.* Where a party purchases grain for another under an agreement that he is to receive a certain commission therefor, he is not entitled to the commission for making the purchase, if he fails to deliver the grain or appropriates it to his own use.

11. THE JURY, *not the court, decide facts.* It is erroneous to instruct a jury to disregard certain items in an account, in regard to which evidence has been given; it is the province of the jury, not the court, to decide whether such items have been proven.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. A. L. MERRIMAN, Judge, presiding.

This was an action of assumpsit instituted in the Circuit Court in 1858, by Charles Walker, as surviving partner of Walker & Kellogg, against Henry Myers and Stanley J. Dawson, partners under the name and style of H. Myers & Co.

The declaration contained the common counts for goods, etc., sold and delivered; goods sold; work and materials; money loaned; money paid; money had and received; account stated; interest; and corn, wheat and grain delivered to the defendants, and by them sold and disposed of for their own use and benefit.

The plaintiff's bill of particulars embraced, upon the debit side, items for cash advanced on corn; sundry drafts drawn by defendants, and paid by Walker & Kellogg; lumber; gunny sacks, and interest. Upon the credit side were items of corn, amounting to ten thousand bushels, purchased by the defendants for Walker & Kellogg; commissions for the same; gunny sacks returned, etc., leaving a balance claimed by the plaintiff, of $6,685.87.

The defendants pleaded the general issue, with notice of set off. The bill of particulars filed by the defendants under their notice of set-off, contained items of corn; storage of the same; sacking and hauling; commissions; labor on boats; twine, etc.; amounting in the aggregate, as claimed, to $12,822.87.

The cause was, originally, tried in the Circuit Court, in

1859, the trial resulting in a judgment for the plaintiff; that judgment was reversed in this court at the April term, 1860, and remanded for a new trial, 24 Ill. 133. At the December term, 1860, of the Circuit Court, the judgment of the Supreme Court was presented, and the cause again placed upon the docket for further proceedings.

At the March term, 1861, the defendants made an application for a change of venue, alleging that they could not obtain a fair and impartial trial in that court, on account that the judge then presiding was prejudiced against them. This application was denied; and the cause being continued, came on for trial at the November term, 1861, before the Hon. A. L. Merriman, Judge, who was not presiding at the term at which the application for a change of venue was made.

The controversy is mainly based upon alleged breaches of contract in regard to the matters spoken of in the following instruments of writing:

"Peoria, February 13, 1854.

"This certifies, that we have agreed to pay H. Myers & Co. four cents per bushel of 56 ℔s., for purchasing and delivering corn on board our boats the coming season, they purchasing the same at as low a price as possible; and if, in our opinion, the price should be too high, we are to notify them, and they are to stop buying. It is understood we are to keep them supplied with money as needed for paying for same, and they are to deliver us the same quantity of corn their account shows as being bought for us, and charged to our account. It is understood they are to purchase for us alone, and not for others. It is understood the above refers to corn bought at their warehouse at Spring Lake, upon the Illinois river.

WALKER & KELLOGG."

"Peoria, February 13, 1854.

"This certifies, that we have this day agreed to purchase corn at our warehouse in Spring Lake, the coming season, for Walker & Kellogg, and said corn, when purchased, is to be subject to their order; also, we are to be governed by them as to price to be paid from time to time, and are to receive four cents per bushel for buying, storing and delivering on

board their boats, we making up to them the same quantity reported as bought for them.

                                        H. MYERS & CO."

"This certifies, that we have sold and agreed to Walker & Kellogg, on board their boats, during the coming months of April and May, as they may call for the same, ten thousand bushels of sound merchantable corn, of 56 ℔s. to the bushel, for which they are to pay us thirty-six cents per bushel. It is understood said corn is now at our warehouse at Spring Lake, upon the Illinois river, and that they are to take it from that point, we putting it on board free of charge to them; and we hereby acknowledge the receipt of one thousand dollars upon said corn, in part payment for the same.

"Dated PEORIA, February 13, 1854.          H. MYERS & CO."

"Received in store from Walker & Kellogg, and subject to their order, and free of all charges on board their boats, or any boats they may send for the same, thirty thousand bushels shelled corn in good order and condition, said corn being stored at the warehouse at Spring Lake, Tazewell county, and occupied by Moore, Pratt & Co., in connection with whom the corn has been bought for Walker & Kellogg, and with their funds.

"PEORIA, April 15, 1854.          H. MYERS & CO."

During the trial the plaintiff called Henry M. Kellogg to testify on his behalf, who, after being sworn, was examined by the counsel for the defendants, and upon that examination the witness said:

"I am a brother of William Kellogg, the deceased partner of Walker & Kellogg. Said William Kellogg is now dead, and I am his administrator. He never was married, and left no children or descendants of children. The firm of Walker & Kellogg's debts would not exceed one thousand dollars, but no assets and no collections made."

Defendants then objected to said witness being allowed to testify, because he was administrator of William Kellogg, and one of his heirs at law, and would receive a part of whatever was given by verdict to the plaintiff.

Thereupon, the plaintiff produced the following release :

"CHARLES WALKER
*vs.*     *In the Circuit Court of Peoria county — In assumpsit.*
HENRY MYERS *et al.*

"For and in consideration of the sum of one dollar to me in hand paid by Charles Walker, the plaintiff above named, I do hereby release and assign to the said Charles Walker aforesaid, all interest, right, title, claim, property and demand which I may have, either as heir or administrator of William Kellogg, deceased, or otherwise howsoever, in or to any part or portion of the money or claim sought to be enforced or recovered in this suit. In witness whereof, I have hereunto set my hand and seal at Peoria, this 7th day of December, 1861.

HENRY M. KELLOGG. [SEAL.]"

But defendants still objected to said Kellogg being allowed to testify, because if the costs should be adjudged against the plaintiff, it would diminish the fund in which witness had an interest, as heir of William Kellogg, and because the witness had no right to give any such release; but the court permitted the witness to testify, to which the defendants at the time excepted.

The witness Kellogg testified in reference to an advance of money by Walker & Kellogg to the defendants, to the amount of $11,783.94, after deducting an old account and for sacks returned; and that the defendant, Dawson, admitted the debit side of the plaintiff's account to be correct, except the item of interest.

The defendants introduced evidence in reference to the quantity of corn delivered by them to Walker & Kellogg; and the neglect of the latter to take away corn from the warehouse of the defendants within a reasonable time, by reason of which the defendants claimed that they were put to extra expense in sacking and hauling a portion of the corn to a point where it could be shipped, and some of it became heated and damaged. The defendants also claimed that they were entitled to storage upon the corn remaining more than a reasonable time.

Among others, the following instructions were asked on the part of the defendants :

Myers et al. *v.* Walker.

1. The jury are instructed that the plaintiffs in this cause are not entitled to recover for money they advanced to purchase the corn with, and for the corn also.

Which instruction the court refused to give, but struck out the word *also*, and added the following qualification : " purchased with such money," and gave it so qualified ; to which refusal to give said instruction as originally written, and qualifying the same, the defendants at the time excepted.

5. There is no time specified in the receipt dated April 15, 1854, when Walker & Kellogg were to send for the corn, and in that case, Walker & Kellogg would be required to send for the corn, and in a reasonable time ; and if Walker & Kellogg failed or neglected to send for the corn in a reasonable time ; and if the jury further believe, from the evidence, that by reason of such failure and neglect of Walker & Kellogg to send for and take away the corn in a reasonable time, a part of the corn was lost or spoiled, then, unless the defendants were guilty of some negligence, Walker & Kellogg must sustain such loss and damage, and the jury should not allow the plaintiffs for any corn so lost or spoiled.

Which instruction the court refused to give, but added the following qualification : " Unless the jury believe, from the evidence, that the time for the delivery of such corn was changed by some other contract between said parties, or that the corn specified in this receipt was subject to the terms of the contract of February 13, 1854 ; " and gave it so qualified.

6. If the jury believe, from the evidence, that the defendants had on hand in the warehouse of Moore, Pratt & Co., the 30,000 bushels of corn specified in the receipt dated April 15, 1854, and were then ready to deliver the same at that date ; and if the jury further believe, from the evidence, that the plaintiffs did not, within a reasonable time, call for and take away the corn, and that by reason of the failure of the plaintiffs to remove the corn in a reasonable time, the defendants were subjected to and did pay for the sacking, hauling, and for storage on the corn, in order to take care of and ship the corn, then the jury should allow the defendants a reasonable compensation for such sacking, hauling, and extra storage.

Which instruction the court refused to give, but added the following qualification : " Unless the jury further believe, from the evidence, that the time for the delivery of such corn was changed by some other contract between said parties, or that the corn specified in this receipt was subject to the contract of February 13, 1854;" and gave it so qualified.

13. The court instructs the jury, that by the terms of the receipt given by the defendants to the plaintiffs for the thirty thousand bushels of corn, dated April 15, 1854, the defendants became the bailees of the corn for the plaintiffs, and were only bound to take reasonable care of the same, and have the same ready for delivery for a reasonable time; and if the same was injured without the negligence of the defendants, the defendants are not responsible for such injury, and had a right to charge storage for any neglect to carry it away after a reasonable time, if the jury believe, from the evidence, that the plaintiffs failed to take it away in a reasonable time, and were notified to do so.

14. The court instructs the jury, that under the pleadings in this case, the plaintiffs are not entitled to recover damages for any failure or refusal by the defendants to deliver any corn purchased.

15. The court instructs the jury, that the defendants are entitled to have credit for the corn at the price they paid for it at Spring Lake, and if the corn fell in price after it was bought, the plaintiffs would have to sustain such loss.

The court refused to give the 13th, 14th and 15th instructions, and exception was taken thereto, and to the ruling of the court in adding the qualifications to the 1st, 5th and 6th instructions asked by the defendants.

With other instructions the following was given for the plaintiff :

3. If the jury believe, from the evidence, that the defendants admitted the correctness of the plaintiff's account given in evidence, and that the account which the defendants furnished of their claim in 1858 is correct, they will find for the plaintiff the difference between the two accounts; and if they believe, from the evidence, that the season mentioned in the

contracts extended from the opening to the close of navigation in the spring and fall, they will find for the plaintiff the difference between the two accounts, deducting from defendants' account all charges except for commission, sacks, meat, twine, and labor on boats, and ice.

Excepted to by defendants.

The jury returned a verdict for the plaintiff for the sum of $3,323.23.

A motion for a new trial being overruled, a judgment was entered against the defendants, who thereupon sued out this writ of error.

The assignment of errors questions the rulings of the court below,

1.   In refusing the application for a change of venue;

2.   In allowing the witness, Kellogg, to testify;

3.   In refusing to give the 13th, 14th and 15th instructions asked by defendants;

4.   In refusing to give the 1st, 5th and 6th instructions asked by defendants, as they were originally written, and in qualifying the same; and

5.   In giving the 3rd instruction for the plaintiff.

Messrs. ROBERTS & IRELAND, for the plaintiffs in error.

Mr. NORMAN H. PURPLE, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court.

The application for a change of venue, was based upon an affidavit, that the party feared that he could not obtain a fair trial before the judge then presiding. And whilst the venue was not changed to another circuit, a trial was had before a different judge against whom there was no complaint. This practically accomplished all that was sought by the application for a change of venue. When the reasons for a change of venue ceased to exist, the necessity and the right to a change of venue also ceased. The party obtained a trial before

another judge, against whom he made no objection, and he has sustained no wrong by a failure to transfer the cause to a different circuit. We perceive no force in this objection.

It is insisted that witness, Kellogg, was incompetent to testify in the case. He was the brother, the administrator and heir of the deceased partner of defendant in error, with whom the matters in dispute in this case originated. It is, however, insisted he was rendered competent by a release executed by himself to defendant in error of all of his interest, as administrator, in the subject-matter of this suit. Did this remove his interest, and restore his competency? This release would, no doubt, prevent him from recovering from defendant in error any portion of any recovery which might be had in this suit, whether claimed as heir, or as administrator, of the estate of his brother. If the defendant in error, however, was unsuccessful in the suit, he would, undeniably, have the right to pay the costs, out of the assets of the late firm, and on a settlement with the administrator of his deceased partner, he would have a right to a credit for the amount. The fund would thus be diminished to that extent.

On a final settlement, the witness would be liable to receive less than if the suit terminated in favor of defendant in error. A failure to recover would, therefore, reduce the fund in the distribution of which the witness has a right to participate. This witness, therefore, had an interest in the recovery by defendant in error to the extent of his liability to account for the costs of this suit. This interest, it seems to us, is as direct as if he were a party to the record as far as the liability for costs is involved. It is more direct than the liability of a security for cost, and yet he is not competent. In neither case is the party liable to have a judgment rendered against them in the suit, but in both they are ultimately liable.

Whether plaintiffs in error had money of defendant in error in their hands, unexpended, after deducting all proper credits, was a question for the determination of the jury. We deem it unnecessary to discuss the weight of evidence on this question, as that will be the province of the jury on a future trial of the case.

23

It is urged that the court below erred in modifying defendants' first instruction. But no objection is perceived to the instruction as given. It informed the jury that plaintiff could not recover back money paid out in the purchase of corn for plaintiff, and also the value of the corn thus purchased. If all the money furnished by plaintiff was expended in the purchase of corn, under the contract, and it had been delivered or stored ready for delivery, according to the terms of the contract, then all liability of the defendant ceased. If, however, he had failed to purchase the corn, to the extent of the funds furnished, or had purchased the corn and failed to deliver, or store it, according to the agreement, then he was liable for the portion not purchased or delivered to plaintiff in store, or otherwise. If defendant furnished the full amount of corn, it could make no difference whether it was purchased with the identical, or other money. This instruction does not contravene this principle.

The court below modified defendants' fifth instruction, which is also assigned for error. As it was drawn, and before it was modified, it asserted that as defendants' receipt for plaintiff's corn specifies no time within which Walker & Kellogg were to send for the corn, they were bound to remove it in a reasonable time, and if loss resulted from a failure to do so, the plaintiff must sustain the loss, unless defendants were guilty of negligence. The liability of defendants, as bailees, whether the purchase was of corn already in store, or was of corn received in store, as the receipt specifies that it is to be stored and put aboard of boats free of charge, was that they should use ordinary care and diligence in its preservation. The qualification was no doubt introduced to make a distinction, that if the corn was purchased under the agreement of the 13th of February, and had not been delivered so as to pass the title to plaintiff, then the defendants took the risk of any loss which might occur. The receipt states that defendants had received plaintiff's corn in store, and that corn required no further delivery to pass the title, and defendants, as to it, were only liable for ordinary diligence in its preservation.

The sixth instruction asked by defendants asserts that under the receipt for the thirty thousand bushels of corn in store, plaintiff was bound to send for, and remove it in a reasonable time, and if, by failing to do so, the defendants were subjected to additional expense in sacking, hauling and storage, defendants should be allowed a reasonable compensation therefor. No objection is perceived to this instruction, unless it be that it should have been modified so as only to give the right to storage after notice to remove the corn. Defendants were only bound to store the corn for a reasonable time free of charge. And only being bound to deliver it on board of the boats within that time, and if, by failing to so remove, it produced any additional expense, defendants were entitled to compensation for the increased labor and expense of delivery. It was so held in this case when previously in this court. 24 Ill. 133.

The principles already announced render a discussion of defendants' thirteenth instruction unnecessary. Their fourteenth instruction is too general in its terms. The defendants were only entitled to be allowed for corn delivered to plaintiff in store or otherwise, at the prices authorized to be paid. If they paid higher prices than was authorized, they must sustain the loss of the excess. The defendants' fifteenth instruction is also too general. If defendants purchased corn for the plaintiff under the contract, and failed to deliver it, or appropriated it to their own use, they had no right to the commission agreed to be paid for its purchase.

Plaintiff's third instruction directed the jury to disregard all charges in defendants' account, " except for commissions, sacks, meat, twine, labor on boats, and ice." Now, there were charges in his account for large quantities of corn, delivered at various times, and there was evidence tending to establish their correctness. These items, by this instruction, were improperly taken from the consideration of the jury. It was the province of the jury, and not the court, to determine what charges were proved. This instruction was therefore improperly given.

The judgment of the court below must be reversed, and the cause remanded. *Judgment reversed.*