# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

## THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

### JOHN HARRINGTON.

*Opinion filed October 24, 1901.*

1. CHANGE OF VENUE—*discretion of court as to granting change of venue.* Under section 4 of the Venue act, if a petition for change of venue is based upon the prejudice of the inhabitants of the county, and counter-affidavits are filed, it is a matter of discretion with the judge whether the petition shall be granted or denied, and such discretion is not reviewable unless it has been abused.

2. SAME—*court may set aside order denying petition for change of venue.* An order, entered in vacation, denying a petition for a change of venue is merely interlocutory, and may be set aside by the court at the following term and leave be given to the parties to take such steps as they might deem advisable.

3. SAME—*right to change for prejudice of judge is taken away by substitution of another judge.* The right to insist on a change of venue because of the prejudice of the judge is taken away where another judge of a different circuit is called in to try the case at the request of the judge charged with being prejudiced.

4. LAW AND FACT—*whether plaintiff was exercising due care is a question of fact.* In an action against a railroad company by a switch-

man employed by another road, whether the plaintiff, in standing upon the foot-board of the switch engine instead of on top of the cars, was exercising due care for his safety is a question of fact to be determined by the jury from the evidence, and its verdict, approved by judgments of the trial and Appellate Courts, is conclusive.

5. Instructions—*rule as to instructions which summarize facts and authorize a recovery.* An instruction based upon the plaintiff's hypothesis or theory is not erroneous if it summarizes all the facts essential to a recovery on that particular theory, since it is not necessary that it embody evidence tending to establish a distinct antagonistic theory.

6. Same—*party cannot complain of error which may also be found in his own instructions.* A party has no right to complain of error in his opponent's instructions when a like error appears in his own.

7. Same—*instruction may refer to the allegations of the declaration respecting negligence.* If an instruction specifically sets out the negligence of the defendant, it is not erroneous because it conditions the right of recovery upon the belief of the jury, from the evidence, that the injury complained of resulted from the defendant's negligence "as charged in the declaration."

8. Same—*instruction stating measure of damages need not recapitulate all elements of the cause of action.* An instruction stating the measure of damages is not required to recapitulate all the different elements constituting the cause of action which have been set forth in other instructions.

9. Words and Phrases—*word "unavoidably" construed, as used in declaration.* The word "unavoidably," as used in declaration charging that an engine and cars "were unavoidably run or driven upon the said track," does not mean "inevitably," but merely unavoidably in the exercise of ordinary care on the part of the persons operating the engine and cars.

10. Appeals and Errors—*when party cannot complain that proof is not within allegations.* Although the facts proven are not within the allegations, yet neither party can complain if each procures instructions declaring the law applicable to the facts proven, regardless of the issues made by the pleading, and asks a verdict in accordance therewith.

11. Fellow-servants—*doctrine not applicable where a suit is not against the common master.* The negligence of a fellow-servant is a defense where the suit is against the common master, but not where it is against a third party.

12. Negligence—*effect where combined negligence of two is the cause of injury.* If the combined negligence of two parties is the proximate cause of an injury, either or both may be held responsible for the consequences resulting therefrom.

13. EVIDENCE—*hypothetical question may be asked if based upon the evidence.*  A hypothetical question may be put to an expert witness if there is evidence tending to prove the facts stated in the question.

14. SPECIAL INTERROGATORIES—*the court may refuse special interrogatories and substitute others.*  The trial court has power to refuse requested special interrogatories and substitute others of its own motion.

15. SAME—*special interrogatories should relate to matters controlling the general verdict.*  Special interrogatories are properly refused which call for evidentiary facts only, and not ultimate ones, which would control the general verdict.

16. SAME—*when special interrogatory is properly refused.*  A special interrogatory requiring the jury to find whether the "act of the plaintiff in negligently placing himself" in a certain position contributed to cause the injury, is properly refused because it assumes that the plaintiff was negligent.

17. SAME—*what does not render erroneous special interrogatories prepared by the court.*  Special interrogatories substituted by the court, of its own motion, for those prepared by the defendant, are not rendered erroneous because they are preceded by the statement, "If you find a general verdict *for the plaintiff* in this case you will also answer and return with your verdict the following questions."

*Chicago & Alton R. R. Co.* v. *Harrington,* 90 Ill. App. 638, affirmed.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. B. R. BURROUGHS, Judge, presiding.

This is an action on the case, brought in the summer of 1897 by the appellee against the appellant company to recover damages for a personal injury.  The first trial of the cause resulted in a judgment in favor of the appellee for $11,000.00.  An appeal was taken from this judgment to the Appellate Court.  The Appellate Court reversed the judgment and remanded the cause.  This judgment of reversal and remandment was entered by the Appellate Court at the February term, A. D. 1898, thereof.  Appellee filed a remanding order; and the cause was again tried, resulting in a verdict in favor of the appellee for $15,000.00.  Upon the argument of the motion

for a new trial on November 4, 1899, the trial court required the appellee, plaintiff below, to enter a *remittitur* of $5000.00, and appellee, having entered such *remittitur*, judgment was then rendered in his favor against the appellant on November 4, 1899, for $10,000.00. An appeal from this second judgment was taken to the Appellate Court, and the Appellate Court has affirmed the judgment. The present appeal is prosecuted from such judgment of affirmance.

The East St. Louis freight yard of the Toledo, St. Louis and Kansas City railroad, (commonly called the "Clover Leaf,") is what is called a stub-yard, and the only way of getting into and from the yard with cars is from the east end of it. A main or lead track runs from the east end of the yard to the freight house at the west end. From this main or lead track a number of switches branch off westerly, on which are received freight cars coming from other roads, at all hours of the day and night. The switch tracks are connected with the main or lead track by switches.

On January 27, 1897, early in the morning, and while it was yet dark and was snowing, a switch crew of the appellant company transferred a number of cars of perishable freight from appellant's road to a switch track of the Clover Leaf road, and, in doing so, omitted to place the cars a sufficient distance down the switch track to allow a locomotive and cars to pass along the lead track without coming in contact with the last car so placed on the switch track, and also omitted to close the switch, but left it open.

Several hours before the servants of the appellant company had thus transferred its cars to a switch track of the Clover Leaf road, a switching crew of the Clover Leaf road had gone out of the yard up to Madison, or Miller's Station, to take some cars, and returned to the freight yard of the Clover Leaf road after appellant's switching crew had finished their work and left the yard.

The switching crew of the Clover Leaf road, which thus entered the freight yard between four and six o'clock on the morning of January 27, 1897, consisted of five men. Of these five men one was the fireman and one was the engineer. Besides the fireman and engineer there was a foreman and there were also two helpers. Appellee was one of these helpers. When the switching crew of the Clover Leaf road came down the lead track, two freight cars were fastened to the locomotive ahead of it, so that the two freight cars were pushed forward by the locomotive. When the switching crew entered the freight yard, the engineer and fireman were in their proper places upon the locomotive. The foreman was in the cab of the engine. One of the helpers was on top of the forward car of the two cars which were pushed by the engine. Appellee, the other helper, was standing upon the footboard in front of the engine, and between the engine and the second or last of the two cars. The engineer was named Neff. The fireman was named Thomas or Thompson. The foreman was named Donahue. The helper on the forward car was named Fox. They were shoving the two cars westward to the freight house, and it was the intention to cut the cars off and leave them.

When the servants of the appellant transferred appellant's cars, containing perishable freight, from appellant's road to one of the switch tracks of the Clover Leaf road in the freight yard of the latter, they left the switch open, and the hindmost of appellant's cars projected over from the side switch, upon which said cars stood, on to the main or lead track. The result was that, when the engine and the two cars ahead of it, which the switching crew of the Clover Leaf road were pushing, reached the switch track on which appellant's servants had left its cars, the cars, so pushed by the Clover Leaf switching crew, ran into and collided with appellant's cars. The result of this collision was that the locomotive, on the front foot-board of which appellee was riding, and

the rear car of the two cars in front of the locomotive, came together, breaking appellee's legs, tearing off a finger, and otherwise severely injuring him.

The negligence, charged in the declaration against the servants of appellant, was that they left the cars, containing perishable freight, on the switch track, and neglected to close the switch.

The declaration contains only one count, and alleges that the plaintiff, on January 27, 1897, was in the employ of one Pierce, receiver of the Toledo, St. Louis and Kansas City Railroad Company, or the Clover Leaf company, as a switchman at the depot and yards of the receiver in East St. Louis; that the defendant, in delivering nine cars to the receiver upon his track at such yard in the night time, negligently left and placed the same so near the switch connecting such track with the lead or main track, that room was not left for other cars or engines to pass along such lead or main track without colliding therewith; that appellant's servants carelessly left said switch open, which they ought to have closed and set for such lead or main track; that, while plaintiff was riding on the foot-board of a certain switching engine of the receiver, to which two freight cars were attached, with due care and diligence, "said engine and cars were unavoidably run and driven upon said track where the defendant's servants had left the cars aforesaid, by reason of said switch being left open as aforesaid, and up to and against said cars with such force that the car next to the engine, upon which the plaintiff was so riding, was pushed and jammed against the plaintiff and said engine, whereby the plaintiff was caught between the car and engine and crushed and injured."

Charles P. Wise, for appellant.

F. C. Smith, M. Millard, and A. R. Taylor, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

*First*—After the cause was re-instated in the trial court upon the reversal and remandment thereof by the Appellate Court, appellant made two applications for a change of venue. The first application was made in vacation on November 26, 1898, to the judge of the city court of East St. Louis after due notice given to appellee, and the petition for a change of venue alleged that the inhabitants of the city of East St. Louis were so prejudiced against appellant, that it could not obtain a fair trial in the city court of East St. Louis. Attached to the petition were affidavits in support of its allegations. The court refused to grant the change of venue, to which appellant excepted, and on the same day presented its bill of exceptions, which was signed by the judge, and filed. On December 5, 1898, the city court of East St. Louis met for its December term, and on December 9, 1898, the judge of that court, on his own motion, set aside the order denying a change of venue, made in the cause in vacation, and ordered the parties to take such steps as they saw fit. Appellant objected to the setting aside of such order, contending that the court had then no power to do so, and took exception to the ruling of the court. On December 12, 1898, appellee, plaintiff below, asked leave to file counter-affidavits, which the court granted, and to which appellant objected and excepted. After the counter-affidavits were filed, the court examined and considered all the affidavits on both sides, and again denied the petition for a change of venue; and appellant presented its bill of exceptions, which was signed and approved on December 19, 1898.

On August 28, 1899, appellant made a second application for a change of venue; and this second application was based upon the alleged prejudice of the judge of the city court of East St. Louis. The petition therefor stated, that appellant did not waive the alleged error of the

court in denying the previous application for a change of venue on account of the prejudice of the inhabitants of East St. Louis. The court denied this second petition, and signed and sealed a bill of exceptions.

When the case was called for trial, appellant filed written objections to going to trial, contending that the court had no jurisdiction to try the case, because, *first*, it should have granted the petition for a change of venue, as asked in vacation; and because, *second*, it should have granted the change of venue based upon the alleged prejudice of the judge. These objections were overruled.

The first alleged error, complained of by the appellant, is the action of the trial court in refusing the applications for a change of venue at the times and under the circumstances above stated. It is said that, when the court refused to grant the change of venue petitioned for in vacation, the requirements of the statute had been complied with, and the *status* of the matter had been fixed, so that the court had no discretion thereafter to set aside the order, denying the petition for a change of venue.

The second paragraph of section 1 of the "act to revise the law in relation to change of venue," provides that, "where either party shall fear that he shall not receive a fair trial in the court in which the suit or proceeding is pending, because the inhabitants of the county are or the judge is prejudiced against him," a change of venue may be had in any civil suit or proceeding in law or equity. (3 Starr & Curt. Ann. Stat. p. 3981).

The fourth section of the Venue act provides that, "if the cause for the change is the prejudice of the inhabitants of the county, * * * the petition shall set forth the facts upon which the petitioner founds his belief, and must be supported by the affidavits of at least two other reputable persons resident of the county. The adverse party may controvert the petition by counter-affidavits, and the judge may grant or deny the petition as shall

appear to be according to the right of the case." (3 Starr & Curt. Ann. Stat. p. 3983).

Section 4 thus makes it a matter of discretion with the judge, in cases provided for by said section and where counter-affidavits are filed, to determine whether the petition for change of venue shall be granted or denied. The exercise of this discretion is not a subject of review, unless it appears that the trial court has abused its discretion. (*Hall* v. *Barnes*, 82 Ill. 228). It is not shown here that there was any abuse by the court of such discretion; and we deem it unnecessary to discuss in detail the statements made in the affidavits.

It is claimed by the appellant that, when the court entered its first order in vacation denying the petition for a change of venue, it was thereafter without jurisdiction to take any steps in the case. This contention is without force. The order, denying the application entered in vacation, was a merely interlocutory order, and the court had power to set it aside. It is the duty of a trial court, and it is also a proper exercise of its jurisdiction, to set aside an order improvidently made. While a cause is pending, and the parties are before the court, the court has control over the record and the proceedings in the cause, and has jurisdiction over its judgments and final orders of a pending term, and may, during the term, or while the cause is pending and the parties are in court, for cause appearing, amend or set aside its orders. (*Coughran* v. *Gutcheus*, 18 Ill. 390). It is well settled that the court has the discretionary power, at any time during the term at which an order has been entered, whether it be interlocutory or final, to vacate or set it aside for such causes as may be necessary to promote justice. (*Bolton* v. *McKinley*, 22 Ill. 204; *Edwards* v. *Irons*, 73 id. 583).

In *Fort Dearborn Lodge* v. *Klein*, 115 Ill. 177, we said "that, under the present liberal practice, the court has the power, and that it is its duty, at any time before trial, when it becomes satisfied that an erroneous ruling

has been made with respect to the sufficiency of a pleading or other similar matter, to promptly set aside the order and correct the error." Where the order entered is interlocutory, the court certainly has the power and jurisdiction to make such further order in the cause as justice may require. (*Campbell* v. *Powers*, 139 Ill. 128).

In the case at bar, when the judge in vacation refused to grant a change of venue, he did not lose, but retained jurisdiction of the cause, and, therefore, it cannot be said that further action in the matter could not be taken by the trial court. A few days after, when vacation ended and the term of court began, the court had full power to act by setting aside its former order, which refused a change of venue, and to give leave to both sides to take such steps as might be deemed advisable. Appellant was not, therefore, prejudiced in any manner, but declined to act, and cannot now be heard to complain. Upon the filing of counter-affidavits by appellee, the court had the right, upon further consideration, to deny the application.

As to the application for a change of venue subsequently made, and based upon the alleged prejudice of the judge, it is sufficient to say that another judge of a different circuit was called in to try the case at the request of the judge so charged with being prejudiced. This arrangement rendered a change of venue unnecessary, and took away the right of either party to make an application.

In *Myers* v. *Walker*, 31 Ill. 353, an application for a change of venue was based upon an affidavit, that the party feared that he could not obtain a fair trial before the judge then presiding; and, whilst the venue was not changed to another circuit, a trial was had before a different judge, against whom there was no complaint; we there said (p. 366): "This practically accomplished all that was sought by the application for a change of venue. When the reasons for a change of venue ceased to exist, the necessity and the right to a change of venue also

ceased. The party obtained a trial before another judge against whom he made no objection, and he has sustained no wrong by a failure to transfer the cause to a different circuit." (*Chicago, Burlington and Quincy Railroad Co.* v. *Perkins*, 125 Ill. 127).

For the reasons thus stated, we are of the opinion that there was no error in the action of the court below in refusing the applications for a change of venue.

*Second*—The appellant complains of the giving of certain instructions given by the trial court for the appellee, and of the refusal of certain instructions asked by the appellant. It would be impossible, within the compass of this opinion, to discuss, in detail, all the points and objections made by counsel for appellant upon this branch of the case. Only the general features and characteristics of the instructions will be noticed. In order to understand them, it will be necessary to refer to some of the facts developed by the testimony, and to the theories, upon which the case was tried by both parties in the court below.

The switching crew of the Clover Leaf road had left the freight yard of that road before midnight to take some cars to a point three or four miles distant, and was absent several hours. During their absence a switching crew of the appellant company had brought a train of some nine cars, containing perishable freight, said to be oranges and celery, and had placed these cars upon one of the side switches branching off from the main or lead track. Having done so, appellant's switching crew left the yard. Instead of closing the side switch, appellant's crew left the same open, and left the hindmost freight car projecting on the lead or main track. When the switching crew of the Clover Leaf road returned to the freight yard with a locomotive and two freight cars in front thereof, it passed along the main or lead track, and collided with the hindmost of appellant's freight cars, and caused the injury to the appellee.

The appellee charges negligence against the appellant company, because it left the side switch open, and left the hindmost of its freight cars projecting upon the lead track. Appellee contends that appellant's switching crew should have shoved its freight cars far enough along upon the side track to avoid the projection of either or any of the cars over the lead track, and should then have closed the switch. It is further contended by appellee that, if the side switch track was too short to accommodate all the cars, one or two cars should have been cut off and put upon another switch track.

Upon this branch of the case, and as bearing upon the question, whether or not appellant was guilty of negligence in the respect thus indicated, appellee introduced a large number of witnesses, testifying to the custom which existed in regard to this matter in freight yards like the one in controversy, which are called "stub"-yards. It is said that, in a stub-yard, there is a lead track from which the side switch tracks branch off, and that, in yards which are not stub-yards, there is a main track along which both passenger and freight cars pass. It is not denied that, in the latter class of yards, it is customary to close the side switches, and not allow any projection of cars over the main track.

The testimony of the appellee tends to prove that, when a railroad company takes freight cars into the freight yard of a foreign company, and places them upon a side switch track, the custom is to shove the cars in the clear, that is, so that they will not project over the lead or main track, and either to close the switch, or leave it as the crew found it. Most of appellee's witnesses testified that the custom is to shove the cars upon the side track so as to be clear of the lead track, and then to leave the switch as the switching crew found it. In the present case, the appellee introduced the testimony of one Bennett, who was one of the switchmen employed by the appellant to take its cars into the yard in-

question on the night when the accident occurred. The freight cars of the appellant were delivered to the Clover Leaf on January 27, 1897, between four and five o'clock in the morning while it was dark and snowing. The foreman of the switching crew of appellant was one St. Clair, and Bennett was his helper. Bennett swears, that "the cars were delivered on the left to the lead toward the freight house; the track connected with the lead track by a switch; the switch was set (or closed) for the lead track; it was opened by St. Clair; cars were placed in there; the switch was not closed, because the cars did not clear the main lead."

It thus appears that, when the switching crew of the appellant entered the freight yard, the side switch, upon which they left appellant's freight cars was closed, and that appellant's switching crew, after opening the switch and placing the cars upon the side track, did not leave the switch as they found it,—that is, closed,—but left it open, and left the hindmost car projecting upon the lead track. If appellee's theory was correct, that the custom was to shove the cars on the side-track in the clear, that is, so that they would be clear of the lead track, and to leave the switch as they found it, then appellant's servants did not conform to the custom; because, finding the switch closed, they did not leave it as they found it, but left it open, and did not leave the hindmost car clear of the lead track, but left it projecting over it. Therefore, the testimony of the appellee tending to establish the custom, as contended for by appellee, tended also to establish negligence on the part of appellant's servants.

The testimony of the appellant tends to show, that the custom in reference to delivering cars in the Clover Leaf yard from the Chicago and Alton railroad was to shove the cars in on the side switch track and leave the switch as they used it, that is, open. That is to say, if the switch was open, the custom is alleged to have been to leave it open, and if it was shut, the custom is alleged

to have been not to leave it shut, but to open it, and leave it open. The tendency of appellant's testimony was to show that the custom was, after shoving the cars upon the side switch track, to leave the switch track open, even though a car should project over the lead track. If the custom was as contended for by appellant, then the testimony of the appellant tended to show that it was not guilty of negligence, inasmuch as it conformed to the usual custom in such cases, as contended for by it.

Whether the custom was as contended for by appellee, or was as contended for by appellant, the testimony was conflicting, and there were a large number of witnesses upon both sides. It was for the jury to determine the question, and, upon this question of fact, the judgment of the trial court in favor of appellee and the judgment of the Appellate Court, affirming the judgment of the trial court, are conclusive, so far as we are concerned.

In order to entitle the appellee to recover, it was not only necessary that he should prove such negligence on the part of appellant as caused the injury, but it was also necessary for him to prove that, when the injury occurred, he was in the exercise of ordinary care for his own safety. Upon this branch of the case the trial proceeded upon two different theories, one held by appellee, and one held by appellant.

When the switching crew of the Clover Leaf road entered the freight yard, two freight cars to be left at the freight house were attached to the locomotive, and in front of it, so as to be shoved forward by the engine. When appellee was hurt, he stood upon the front foot-board of the engine. The theory of the appellee is that, by being in that position, he was in the exercise of ordinary care for his own safety. One of the helpers of the switching crew, Fox, was on top of the forward of the two cars. It was his duty to look ahead for obstructions upon the track, and to give a signal to his helper, who passed

that signal on to the engineer. It is claimed by appellee, and the proof tends to support the claim, that the appellee could take his station, either upon the second or last car of the two which were being pushed forward, or upon the front foot-board of the engine, and that, in either place, he was able to see any signal given by the first helper, who was on the forward car, and pass it on to the engineer in the cab of the locomotive. The testimony of the appellee tends to show, that it was as much the usage or custom for the second helper of the switching crew to take his position upon the foot-board, as to take it upon the hindmost of the two cars. The testimony tends to show that, in case the train pushed forward by the engine should contain more than two cars, the helper on the foot-board might not be able to see the signal given by his companion on the front car, but that, where the train consisted of only two cars, as was the case here, it was possible to see the signal.

On the contrary, the theory of the appellant was, that the appellee was guilty of contributory negligence in taking his stand upon the front foot-board of the engine, and that it was his duty to have taken his place upon the last of the two cars which were shoved forward by the locomotive. The testimony of the appellant tends to sustain its theory upon this subject.

A large number of witnesses testified in behalf of appellee upon this branch of the case, and a large number also testified on behalf of appellant upon this branch of the case. Their evidence conflicted, and it was the province of the jury to determine, under the instructions of the court, whether the appellee was guilty of contributory negligence in standing upon the front foot-board of the engine, or whether, in taking his position there, he was in the exercise of ordinary care. This question of fact, like the other question of fact in regard to the negligence of appellant, is settled in favor of appellee by the judgments of the lower courts.

It is claimed by the appellant, that the court below erred in giving to the jury the second instruction, which was given for the appellee. The objection to this instruction is based upon the alleged ground, that it undertakes to summarize the facts necessary to warrant the jury in finding for the plaintiff, but does not recite all the facts. We do not regard the instruction as objectionable in this respect. The instruction is based upon the particular hypothesis or theory contended for by the appellee, and summarizes the elements necessary to a recovery upon that theory without omitting any essential matter. The rule, that an instruction is erroneous which sums up all or a part of the facts which the evidence tends to prove on one side, and omits the facts on the other side, does not apply to an instruction, which merely fails to embody evidence, tending to establish a distinct antagonistic theory. We have said: "All the law requires is that an instruction, based upon some particular hypothesis warranted by the evidence, which undertakes to summarize the elements in the cause essential to a recovery upon that theory, must not omit any essential matter." (*Terre Haute and Indianapolis Railroad Co.* v. *Eggmann*, 159 Ill. 550; *City of Chicago* v. *Schmidt*, 107 id. 186; *Springfield Railway Co.* v. *Hoeffner*, 175 id. 634; *Hanchett* v. *Kimbark*, 118 id. 121). The instruction complained of embodies all the elements necessary to authorize a recovery. The objection made to it implies that evidentiary facts should have been recited, instead of the ultimate facts which formed the issue to be tried. It is not necessary to incorporate all the evidence in an instruction, but only matters which constitute a material issue in the case. The facts alleged to have been omitted are merely circumstances, which form a part of the testimony tending to disprove the plaintiff's cause of action, and are not controlling circumstances. The instruction required the jury to find "from the evidence that defendant's said servants did not exercise ordinary care in placing said cars

upon said switch track so that one of them overlapped said main lead track, and in leaving said switch open;" and this necessarily made the inquiry broad enough to include all the facts and circumstances in any way affecting the question of negligence.

The appellant asked, and the court gave in its behalf, a similar instruction, embodying facts establishing the particular hypothesis or theory for which appellant contended. In the fifth instruction given for appellant there is a summing up of the facts in favor of appellant's theory, as shown by the evidence; and the jury are therein told that, if the facts stated in the instruction, are found to be established by the evidence, the defendant would be entitled to a verdict. The instruction thus given for appellant, while presenting appellant's grounds of defense, did not include all the facts tending to establish plaintiff's right of recovery. A party has no right to complain of an error in an instruction, "when a like error appears in an instruction given at his own request." (*Illinois Central Railroad Co.* v. *Anderson*, 184 Ill. 294; *Hafner* v. *Herron*, 165 id. 242; *Chicago and Alton Railroad Co.* v. *Sanders*, 154 id. 531; *Funk* v. *Babbitt*, 156 id. 408; *Illinois Central Railroad Co.* v. *Beebe*, 174 id. 13).

In view of what has been said, we do not regard the second instruction, given on behalf of the plaintiff, as being sufficiently defective to justify a reversal of the judgment.

It is also contended that the first instruction given for the plaintiff is erroneous, because it conditions the right of recovery upon the belief of the jury from the evidence "that the injury complained of in this cause resulted from the defendant's negligence, as charged in the declaration." The instruction complained of specifically sets out the negligence of the defendant and justifies a recovery, if such negligence be proved, "as charged in the declaration." Instructions, thus referring to the allegations of the declaration, have been approved by this

court in a number of cases. (*Pennsylvania Co.* v. *Marshall,* 119 Ill. 399; *Laflin & Rand Co.* v. *Tearney,* 131 id. 322; *Chicago City Railway Co.* v. *Hastings,* 136 id. 251; *St. Louis, Alton and Terre Haute Railroad Co.* v. *Holman,* 155 id. 21; *Ohio and Mississippi Railway Co.* v. *Porter,* 92 id. 437; *Race* v. *Oldridge,* 90 id. 250; *City of LaSalle* v. *Kostka,* 190 id. 130; *Mt. Olive and Staunton Coal Co.* v. *Rademacher,* 190 id. 538; *Logg* v. *People,* 92 id. 598.)

Appellant complains of the fifth instruction, given for the appellee upon the trial below, upon the alleged ground that the instruction does not leave it to the jury to believe from the evidence in regard to the matters therein set forth, but assumes that there is evidence of the matters so enumerated. The instruction is not subject to the objection thus urged against it. It merely defines the measure of damages, and authorizes the jury, in case of finding the defendant guilty, to assess plaintiff's damages at such a sum as they believe from the evidence will be a fair compensation to him for pain of body, loss of earnings, and expenses incurred; and the instruction requires that all these shall be "shown from the evidence in the case." Such an instruction is not required to recapitulate all the different elements, constituting a cause of action, which have been set forth in other instructions. Its design is to inform the jury what damages they shall award, in case they find the plaintiff entitled to recover. (*Chicago, Milwaukee and St. Paul Railway Co.* v. *O'Sullivan,* 143 Ill. 48; *McMahon* v. *Sankey,* 133 id. 636; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Dowd,* 115 id. 659; *Chicago, Burlington and Quincy Railroad Co.* v. *Payne,* 59 id. 534; *Springfield Railway Co.* v. *Hoeffner, supra*).

Appellant further complains of the sixth instruction, given for the appellee, which defines the word "unavoidably" as used in the declaration. Appellant contends that, inasmuch as the declaration avers that the engine and cars "were unavoidably run and driven upon the said track," a recovery could not be had without showing that

it was impossible to avoid running them upon such track; that is to say, that the word "unavoidable" is synonymous with "inevitable." Counsel for appellant says, that inevitable or unavoidable accidents are accidents produced by physical causes which are inevitable and amount to *vis major;* such as lightnings, storms, perils of the sea, earthquakes, inundations, sudden death or illness, and that, when the word "unavoidably" is used, there is required under the law the highest degree of care.

The construction thus contended for is strained and unnatural. The meaning of the allegation in the declaration is that, with the exercise of ordinary care, the running of the engine and cars on the track was unavoidable, and not that it was unavoidable under all circumstances and conditions; that is to say, the allegation in the declaration means, that the cars were run and driven on the track while the switch was left open, notwithstanding the exercise of ordinary care on the part of appellee's crew. This manner of alleging the grievance complained of is found in all the old precedents. (2 Chitty's Pl.— 13th Am. ed.—p. 599). The instruction told the jury that the word, "unavoidably," as used in the declaration and instructions, "means unavoidably by the exercise of ordinary or due care on the part of the persons operating and controlling the engine and two cars of the Clover Leaf before and at the time of the injury to the plaintiff." We think that the instruction correctly defined the term, as used in the declaration.

It may furthermore be observed, that the case was tried, and the jury was instructed at the instance of both sides, upon the theory that the only questions involved were as to the appellant's negligence in leaving the switch open and the car projecting out over the lead, and the appellee's observance of due care. When the facts proven are not within the allegations of the pleadings, neither party can complain, if each procures instructions, declaring the rules of law applicable to the facts

shown by the testimony, regardless of the issues made by the pleadings, and asks a verdict in accordance therewith. (*Illinois Steel Co.* v. *Novak*, 184 Ill. 501).

Appellant also complains that the lower court erred in refusing to give instructions asked by the defendant, numbered 16, 17 and 18, respectively.

The declaration alleged in substance, that one Pierce was receiver of the Clover Leaf Railroad Company, and had possession of the road, yard and engines as such receiver, and that appellee was working for him as such receiver. Instructions 16 and 17 assume that appellee was required to prove these allegations, and that the question was properly raised by objections to the evidence. Appellant contends that the appointment of the receiver, and the fact, that he was operating the tracks of a railroad company, could not be established without producing record evidence of his appointment, and of his authority so to act. The appointment of the receiver and his operation of the road were merely collateral inquiries, and it was only necessary to show that appellee was rightfully on the engine. But if proof of these allegations was necessary, the appellant itself furnished such proof. Appellant, upon the trial, introduced in evidence the declaration, filed in a suit brought by appellee against the receiver of the Clover Leaf railroad. Appellant is bound by the allegations of this declaration, because it was a part of its own proof. This declaration alleges, that Pierce was receiver of said road, and that appellee was employed by such receiver as a switchman in the yards of said company in the city of East St. Louis, and that said receiver was operating said railroad, and was using its locomotives, cars and switch engines.

Instruction 18 told the jury that, if they believed from the evidence "that the plaintiff was injured because of the failure of the crew of the Clover Leaf road, for which he was working, to keep a lookout to discover the condition of the switches, and whether there were any cars

in the Clover Leaf yard which they were likely to hit with their moving train, and this failure was negligence," then they should find for the defendant. This instruction was properly refused, because it proceeds upon the erroneous theory that appellee was a fellow-servant with the other members of the Clover Leaf switching crew, and with the members of appellant's switching crew. The negligence of the Clover Leaf switching crew could not be imputed to appellee, and could not, under any circumstances, be a justification for the wrongful acts of appellant, if its acts were wrongful. The negligence of a fellow-servant is a defense when an employee sues the common master, but not when he sues some one else for an injury. The suit here is not against the Clover Leaf Railroad Company, of which the appellee and the other members of the switching crew working with him were servants, but the suit is against the Chicago and Alton Railroad Company, and it cannot be claimed that their servants were fellow-servants of appellee. In such a case the doctrine of fellow-servant has no application. (*Chicago and Eastern Illinois Railroad Co.* v. *O'Connor*, 119 Ill. 586; *Spry Lumber Co.* v. *Duggan*, 182 id. 218).

But, even if it were true that the members of the switching crew of the Clover Leaf road failed to keep a lookout to discover the condition of the switches and to see whether there were any cars projecting over the main or lead track, such negligence on their part would be in combination with the negligence of the servants of the appellant company in failing to close the switch and in leaving the hindmost freight car to project over the main or lead track. It is well settled that, when the negligence of two is, in combination, the proximate cause of an injury, either or both may be held responsible for the consequences resulting from their combined negligence. (*Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242). It is unnecessary to inquire whether the crew of the Clover Leaf company did or did not exercise ordinary care, if the ap-

pellee himself was free from contributory fault, and the appellant's negligence was a proximate cause of the injury. The supposed negligence of Fox, who was on top of the forward car, and of Neff, the engineer, cannot be imputed to appellee, in order to exonerate the appellant from blame.

*Third*—It is furthermore contended by the appellant that the court below admitted improper testimony. The testimony thus objected to consists of the evidence of appellee's witnesses in stating what custom, if any, there was with regard to delivering cars by a railroad company to a foreign yard. The object of such question was to show that the usage or custom was to shove the cars in on the side switch track clear of the main or lead track, and to close the switches or leave them as they were found. We know of no good reason why this testimony was not proper. It was allowable for the appellee to prove a general custom or practice in regard to the delivery of cars in foreign yards. It appeared that the manner of making deliveries was in accordance with the general custom, and it could not be error to prove what that custom was. A usage or custom must be certain and uniform and general. A custom is general, when the method of dealing is the universal method of those engaged in the business where the usage exists. (27 Am. & Eng. Ency. of Law, pp. 719-724, and notes; *Steamboat Albatross* v. *Wayne*, 16 Ohio, 513; *Park* v. *Piedmont Life Ins. Co.* 48 Ga. 601; *Sturges* v. *Buckley*, 32 Conn. 265; *Chicago Packing and Provision Co.* v. *Tilton*, 87 Ill. 547).

The case was tried below upon the theory on the part of appellee, that there was a custom or usage in this regard, and on the part of the appellant, that there was a custom or usage in this regard. The custom, contended for by appellant, was different in its nature and character from that contended for by appellee. Both sides tried the case upon the theory that proof of custom was allowable and essential. If the testimony of appellee upon

this subject was objectionable and should have been excluded, then all the testimony of appellant upon the same subject was objectionable and should have been excluded.

A further objection was made by the appellant to the form of the hypothetical questions, in which the expert testimony upon this subject was called for. Very few of the questions thus asked by appellee's counsel were objected to by appellant's counsel. A hypothetical question may be put to a witness if there is evidence tending to prove the facts stated in the question. (*Howard* v. *People*, 185 Ill. 552). The hypothetical questions, asked by appellee, were based upon the state of facts existing at the time appellee was injured, that is to say, upon the circumstances as they actually existed when the switching crew, of which he was a member, entered their own yard where the accident occurred. The question was not whether appellee was rightfully on the foot-board of the engine while crossing the tracks of other companies outside of the yard in question, but whether it was a proper place for him when the engine was pushing the two cars in their own yard to a place where he was to uncouple them. The testimony tends to show that, in order to do that work, it was necessary for him to be upon the foot-board. We fail to see that there is any force in the objection made to the form of the questions addressed to the expert witnesses.

*Fourth*—An objection is also made by appellant to the action taken by the trial court in reference to the special interrogatories submitted to the jury, calling for special findings upon their part.

In the first place, the court declined to give the interrogatories submitted by appellant, and prepared interrogatories of its own motion, which were submitted. This was not error; we have decided that a trial court may refuse requests for special findings, and substitute others on its own motion. (*Chicago and Alton Railroad Co.* v. *Pearson*, 184 Ill. 386; *Norton* v. *Volzke*, 158 id. 402).

By the first interrogatory submitted by appellant, the jury were asked whether it would not have been safer, if appellee had placed himself on the rear foot-board of the engine on the night in question, as the train was entering the yard of the Clover Leaf. This interrogatory was properly refused, because an affirmative answer to it could not have controlled a general verdict had it been in favor of appellee. (*Chicago and Northwestern Railway Co.* v. *Dunleavy*, 129 Ill. 133). The second interrogatory, which required the jury to find whether "the act of plaintiff, in negligently placing himself on the foot-board of the engine next to the car," contributed to cause the injury, was properly refused because it assumed that appellee was negligent. The third interrogatory, which required the jury to find whether the accident to the plaintiff was caused by the negligence of one Fox, who was on the first car of the train, was properly refused, because it called for an evidentiary fact only, and, so, could not have controlled a general verdict for appellee. Upon this subject the Appellate Court in deciding this case well say: "Although Fox and appellee were fellow-servants of a common master, and engaged in the same line of duty, yet that master was not appellant; hence the fact, that they were fellow-servants, could not be availed of by appellant to protect itself against the negligence of Fox, if appellant's negligence contributed to the injury. If the inquiry had been whether the negligence of Fox was the sole cause of the injury, the condition of the matter would have been different from what it now is. Although the negligence of Fox might have caused the injury, yet the negligence of the servants of appellant might also have contributed to the injury, and an affirmative answer, that did not fully negative the latter, would have established an evidentiary fact only. The reasons given, why the court did not err in refusing to give the third interrogatory, apply as well to the fourth interrogatory."

The interrogatories submitted by the court of its own motion, were as follows:

"1st. If you find a general verdict for the plaintiff in this case, you will also answer and return with your verdict the following questions:

"Did the act of the plaintiff, John Harrington, in placing himself on the foot-board of the engine next to the car contribute to cause the injury he received?

"2d. Was the plaintiff, John Harrington, using proper care for his own safety by being upon the foot-board of the engine between the car and the engine when he was injured?"

The jury answered "No" to the first interrogatory, and "Yes" to the second. As is stated by the Appellate Court, the two interrogatories, submitted by the court of its own motion, contained all that was important in the fifth and sixth interrogatories asked by the appellant, and, hence, no error was committed in refusing to submit the latter to the jury.

The main ground, however, upon which the appellant charges that the interrogatories submitted by the court on its own motion were erroneous, is that they began with this statement: "If you find a general verdict for the plaintiff in this case." The contention is that it was erroneous to put the words, "for the plaintiff," after the words, "general verdict." It would have been better if the court had left out the words "for the plaintiff;" but their insertion could not have done appellant any harm.

The third section of the act in regard to special findings and special verdicts, provides that, when a special finding of fact is inconsistent with the general verdict, the former shall control; and we said in *Chicago and Northwestern Railway Co.* v. *Dunleavy, supra* (p. 144): "This necessarily implies that the fact to be submitted shall be one which, if found, may in its nature be controlling. That can never be the case with a mere evidentiary fact. * * * Such inconsistency can arise only where the fact

192—3

found is an ultimate fact, or one from which the existence or non-existence of such ultimate fact necessarily follows, and that is never the case with that which is only *prima facie* evidence of the fact sought to be proved." In *Chicago and Northwestern Railway Co.* v. *Dunleavy, supra,* we also said that an error committed in the giving of special interrogatories, or in the answers of the jury to the same, cannot be regarded as being prejudicial to the defendant, "unless it can be seen that answers to said questions most favorable to the defendant, which of course would have been answers in the negative, would have constituted a finding inconsistent with the general verdict." Interrogatories asked by the defendant are framed for the purpose of controlling any general verdict that may be returned for the plaintiff. In the case at bar, the answers, which might be given to the interrogatories framed by the court, might have had the effect of controlling a general verdict for the plaintiff, but could have had no effect in controlling a general verdict for the defendant. If the jury had answered, that the act of the plaintiff, John Harrington, in placing himself on the foot-board of the engine next to the car, did contribute to cause the injury he received, and if they had answered that the plaintiff was not using proper care for his own safety by being upon the foot-board of the engine between the car and the engine, then the special finding would have been inconsistent with the general verdict in favor of the plaintiff, and such general verdict would have been controlled by the special finding. But, in case of a general verdict for the defendant, an affirmative answer to the first interrogatory framed by the court, and a negative answer to the second interrogatory framed by the court, would have been consistent with such general verdict for the defendant, and not inconsistent with it. If, in case of a general verdict for the defendant, the first interrogatory had been answered in the negative, and the second in the affirmative, it may not have affected the general verdict in favor

of the defendant, because the evidence may have shown that the defendant was not guilty of negligence; and, if the defendant was not guilty of negligence, the plaintiff was not entitled to recover, even if he was not guilty of contributory negligence. The interrogatories, submitted by the court were designed to secure a special finding as to certain matters which might supersede the general verdict, if the verdict should be for the plaintiff, and it was not improper to put the matter to the jury in that way. "The facts, upon which a jury should be asked to find specially, should be material facts, which, if found, would be controlling." (*Chicago and Northwestern Railway Co.* v. *Dunleavy, supra; Terre Haute and Indianapolis Railroad Co.* v. *Voelker*, 129 Ill. 540; *Pike* v. *City of Chicago*, 155 id. 656). The theories of appellant, as embodied in the special interrogatories submitted by it, were presented in the instructions given by the court.

It is also said that the interrogatories given by the court were defective in limiting the exercise of due care to the time when the plaintiff was injured. This criticism is without force, because we have held that the words, "at the time," when used in an instruction in such cases, refer to the whole transaction or series of circumstances, and not to the precise moment when the injury occurs. Here, the words "in placing himself upon the foot-board of the engine," etc., refer to the circumstances which preceded that act, as well as the act itself of standing on the foot-board of the engine. (*Chicago and Alton Railroad Co.* v. *Fisher*, 141 Ill. 614; *Lake Shore and Michigan Southern Railway Co.* v. *Ouska*, 151 id. 238; *McNulta* v. *Lockridge*, 137 id. 270; *Lake Shore and Michigan Southern Railway Co.* v. *Johnsen*, 135 id. 653.)

*Fifth*—Counsel for appellant discusses certain questions of fact, which are settled by the judgments below, and which it is not proper for us to consider. One of these questions of fact is, whether or not the appellant was guilty of negligence. This was submitted to the jury

under proper instructions, and is settled by the judgments of the lower courts.

It is further contended that leaving the switch open was not the proximate cause of the injury to appellee. The injury was caused, not merely by leaving the switch open, but by leaving one of the cars of the freight train to project over the lead. Both the leaving of the switch open and the projection of the car are alleged in the declaration as causes of the accident, and the evidence tends to sustain the allegations of the declaration in this regard. Counsel contends, that the proximate cause of the injury was the negligence of Neff, the engineer of the Clover Leaf crew, and Fox, the helper, who was on the forward car. No instruction was asked, so far as we are able to discover, telling the jury that such negligence was the proximate cause of the accident. In the fifth instruction, however, given by the court for the appellant, the court conditioned the right of the jury to find the defendant not guilty upon their belief from the evidence, "that it was the duty of the employees of the Clover Leaf railroad, in traveling as they were traveling at this time, to be on a constant lookout to ascertain whether any cars had been left in the yards after their departure, and to ascertain whether any cars projected on the track;" and upon their further belief from the evidence, "that the servants in charge of the Clover Leaf train were not exercising care to ascertain the condition of the switches, or whether any cars were where they were likely to strike them." In view of this instruction, the question was squarely left to the jury to say whether or not the accident was caused by the negligence of Fox and Neff.

Whether the negligence of Fox and Neff was the proximate cause of the accident or not was a question of fact for the jury, and not a question of law for the court. It is, therefore, settled by the judgments of the lower courts. It has been repeatedly held by this court, that whether

or not the negligence of the defendant was the proximate cause of the injury is a question of fact for the jury under proper instructions of the court. (*West Chicago Street Railroad Co.* v. *Feldstein,* 169 Ill. 139; *Pullman Palace Car Co.* v. *Laack,* 143 id. 242; *Chicago and Eastern Illinois Railroad Co.* v. *Hines,* 183 id. 482; *Landgraf* v. *Kuh,* 188 id. 484).

After a careful examination of the record, we are unable to discover any reason, which would justify us in reversing the judgments of the lower courts in this case.

Accordingly, the judgment of the Appellate Court is affirmed.                                    *Judgment affirmed.*