City of Chicago v. Bork.

## City of Chicago v. Samuel Bork.

### Gen. No. 12,780.

1. WITHDRAWAL OF JUROR—*when motion for, properly denied.* A motion for leave to withdraw a juror for the purpose of enabling the moving party to obtain additional evidence is properly denied, where such moving party does not appear to have exercised diligence in seeking, prior to the trial, to obtain such evidence.

2. VERDICT—*when not excessive.* A verdict for $6,000 is not excessive, where it appears that the plaintiff at the time of the accident was about forty-nine years of age, was a carpenter, worked ten hours per day and earned twenty-five cents per hour, was prior to the injury, healthy and capable of following his trade, and became after the accident largely incapable of following his usual vocation in consequence of injuries to his back, nerves and internal organs.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed October 8, 1906.

JOHN F. SMULSKI, for appellant; EDWARD C. FITCH and ALFRED T. JOHNSON, of counsel.

CHESTER A. GROVER, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The declaration in this case consists of two counts, in the first of which it is averred, in substance, as

follows: Marianna street, to wit, September 2, 1901, was a public street of the city of Chicago. Then follow averments of the duty of the city in the premises, and that the city disregarded its duty "in that the defendant wrongfully, negligently and carelessly, for a long space of time immediately prior to the date aforesaid, to wit, for the space of six months prior thereto, and on the date aforesaid, allowed and permitted a certain hole to be and remain in said highway or street at the place aforesaid, at or near or just south of and next to a catch basin or construction of brick similar to a catch basin with a trap-door, manhole or opening in the top of said construction; and the said hole in the said street, which defendant, as aforesaid, allowed to be and remain in said street, as aforesaid, was of great depth, to wit, two feet, and of great width, to wit, the width of two feet, and of great length, to wit, of the length of two feet, and so as to be in the way of, and to obstruct the passage of and to endanger persons and the plaintiff passing, while in the exercise of due care for their and his own safety while passing along or driving upon the said street or highway, at the place aforesaid, of all of which dangerous and unsafe condition of said street or highway the defendant then and there, on the date aforesaid, and for a long time prior thereto had notice." Then follows a statement of the accident and appellee's injuries, etc.

The second count is similar to the first, except that it does not describe the hole mentioned in the first count or allude to it otherwise than by the words, "The wagon in which the plaintiff was then and there riding, then and there ran and was propelled into said hole."

The defendant pleaded the general issue, the jury found for the plaintiff and assessed his damages at the sum of $6,000, and the court, after overruling motions for a new trial and in arrest of judgment, rendered judgment on the verdict.

The accident occurred in Marianna street, a short distance west of Western avenue. The latter street lies north and south and the former east and west, so that the streets cross each other at a right angle. Artesian avenue is a north and south street next west from Western avenue. Western avenue is paved. There are sidewalks on the north and south sides of Marianna street, on the same grade as Western avenue, and the roadway is an unpaved dirt road. The width of the roadway is variously estimated by the witnesses at from thirty to forty feet, and is about two feet lower than the grade of Western avenue, except that on its north side it has been raised to about the level of the sidewalk, by the occupant of the premises at the northwest corner of Marianna street and Western avenue, who has a grocery store there. This raised part is about the width of a grocery wagon. Its length does not appear from the evidence, but it is described as running from the grocery store to the barn. There also appears by the evidence to have been a little filling in of the street on its south side, for a short distance from Western avenue, by the occupant of premises on that side. There is a decline from Western avenue to Marianna street, the length of which is variously estimated by the witnesses at from ten to sixteen feet. There is also a decline from Artesian avenue into Marianna street. There is a catch basin in Marianna street a short distance from Western avenue.

The accident happened September 2, 1901, in the forenoon. One Christensen, the owner of a wagon and team of horses, was hired by appellee to haul some lumber to his house on Artesian avenue, between Marianna street and Diversey avenue, which latter street is an east and west street next north of Marianna street. The wagon box was about two feet six inches in depth. Some of the lumber was short, so that it could be loaded into the box of the wagon; other pieces were twelve to fourteen feet in length, and those were

loaded on top of the lumber and the wagon box, the front ends of the timber sticking out in front of the box so far as not to interfere with the horses, and the hind ends sticking out behind the box. Appellee, who helped to load the wagon, testified that when they got above the top of the wagon box he stuck sticks along the sides of the box, between the sides of the box and the lumber in it. There was a chain fastened around the wagon box and the load, and the load was also bound to the wagon with ropes. The height of the load above the bottom of the wagon box was about four feet six inches, and its weight a ton and a half. Christensen, the owner and driver of the wagon, drove north on Western avenue to Marianna street, and then turned into the latter street. When he turned into the street, he and the appellee were sitting on the lumber, Christensen facing toward the horses, and appellee on the left side of the load facing toward the south. The wagon tipped over toward the south a short distance west of Western avenue. The driver jumped and was not injured. Appellee also jumped, and some of the lumber fell on and injured him.

Counsel for appellant contend that the court erred in overruling appellant's motion to exclude certain evidence; that the verdict is contrary to the weight of the evidence; that there is a variance between the declaration and the proof; that the plaintiff did not exercise proper care; that the appellant is not liable for the condition of the street; that the damages are excessive, and that the court erred in overruling appellant's motions for a continuance and a new trial. In both counts it is averred that the plaintiff, on the date aforesaid, was driving and passing along and upon said street or highway, at or near the place aforesaid. The uncontradicted evidence is that one Christensen, the owner of the wagon, was driving the team hitched to it. At the close of all the evidence, and before the jury was instructed, appellant's counsel "moved the

court to instruct the jury to disregard any and all testimony as to persons other than the plaintiff driving the team in question, at the time of the alleged accident, on the ground that there is a variance between the declaration and such testimony," which motion the court overruled.

Counsel for appellee contends that the words drive or driving are not to be restricted so as to mean the control or guidance of the horses drawing a wagon or carriage, but may be used in a less strict sense, as in the phrase, "we took a drive", or "we were driving", and cites the definitions of lexicographers in support of this position; but the precise question here is, how is the word "driving" to be understood when used in a pleading, as in the declaration in this case, in reference to a wagon being drawn by horses. In a case like this it is material to know whether the team was driven by the plaintiff or another person, because if by the plaintiff, the question is presented whether he exercised proper care in driving, whereas, if another person was driving, the negligence of the driver could not be imputed to the plaintiff if he, himself, were without fault. Chicago C'y Ry. Co. v. Wall, 93 Ill. App. 411, and cases there cited. Besides, the pleading is to be taken more strongly as against the pleader.

However, waiving the question whether the motion was made in apt time, we cannot perceive that appellant was, in the least, prejudiced by the ruling.

Christensen was the first witness called by appellee, and he testified that he drove the wagon and that the plaintiff was riding with him on the load, and appellant's counsel made no objection. The case was, thereafter, tried on the theory that appellee was not the driver, and appellant's given instruction five is framed on that theory, as are several of its refused instructions. "When the facts proven are not within the allegations of the pleadings, neither party can complain if each procures instructions declaring the rules

of law applicable to the facts shown by the testimony, regardless of the issues made by the pleadings, and asks a verdict in accordance therewith." C. & A. R. R. Co. v. Harrington, 192 Ill. 9, 27. Objections are made to rulings of the court in the examination of certain of the medical witnesses. We find no reversible error in the rulings.

After the plaintiff's evidence in chief was closed, and after a witness had been called by appellant and testified, appellant moved the court for leave to withdraw a juror and continue the cause, and in support of its motion presented the joint affidavit of Robert S. Cook and Alfred T. Johnson, who deposed, in substance, that they were assistant city attorneys, and had full charge of the investigation and preparation of the cause for trial, and that March 30, 1905, when the cause was reached for trial, they were informed that a Doctor Hook attended the plaintiff, after the injury complained of, and believed from said information that Doctor Elisha I. Hook was the physician meant; but April 4, 1905, they were informed, for the first time, that Doctor Elisha I. Hook was in partnership with his brother, Doctor Merritt B. Hook, and that it was the latter who attended the plaintiff after the accident, and that Doctor Elisha I. Hook's knowledge was derived from consultations with his brother. Doctor M. B. Hook has been a resident of Colorado for two years last past. Affiants were misled and could not have known and did not know that Doctor M. B. Hook was plaintiff's attending physician. Affiants say they cannot safely proceed to trial, in the absence of Doctor M. B. Hook, who is a material witness for defendant. They have been informed and believe, and state the fact to be, that he, if called as a witness herein, would testify that he was called by plaintiff the next day after the accident, and that the ailments and disabilities which the plaintiff now claims to be suffering from were, on said 3rd day of Septem-

ber, 1901, found by said Doctor Merritt B. Hook to have been of long standing, and a chronic condition, and were not caused by the injuries complained of, and that said Doctor M. B. Hook continued to treat said plaintiff for some time after said accident, and that all of said matters which affiants expect to prove are true, to their best knowledge, information and belief, and that they know no other person than Doctor M. B. Hook by whom they can prove the same.

The declaration in this case was filed December 20, 1901. In it the injuries of plaintiff caused by the accident are thus averred: "The wagon in which he was then and there riding capsized or tipped over and the contents thereof, a load of wood and timbers, were thrown over against and upon the plaintiff, and then and there and by reason of his said fall, and by reason of the wagon and contents striking him as aforesaid, the plaintiff was greatly wounded, injured and hurt, and divers bones of his body were broken, and muscles, nerves and ligaments of his body torn, injured, crushed, strained, bruised and damaged; and by and in consequence of the negligence of the defendant, as aforesaid, the plaintiff's kidneys and internal organs were injured, and the plaintiff has suffered and will forever suffer from nervous and kidney disorders, and by and in consequence of the negligence as aforesaid, the plaintiff is unable and always will be unable to control the action of his urine, and his urine passes from his body without his knowledge, and he is unable to control the action of his bladder and the muscles of his body controlling the action of his urine. And by and in consequence of the negligence as aforesaid of the defendant, the plaintiff has suffered injury to his nerves which has caused paralysis of various parts, nerves and muscles of his body, and his limb and various organs of his body have become paralyzed and will forever so remain; and by and in consequence of the negligence of the defendant as aforesaid, the plaint-

iff has sustained injury to his nervous system, and to his brain and other nervous parts of his body, and in consequence of said injury he has suffered and will forever suffer from nervous disorders and his mind and mental faculties have been impaired and will forever so remain."

This, very clearly, was ample notice to appellant that appellee claimed to have been very seriously injured. Doctor Elias I. Hook was the witness who was called by appellant, just before appellant moved to withdraw a juror, and he testified that he and his brother, Doctor M. B. Hook, had offices in Chicago in September, 1901, and also testified: "We were practicing together in Chicago on and after September 2, 1901, until 1903. Then my brother left the city."

The bill of exceptions recites that the cause came on to be tried March 30, 1905. Appellant's counsel, as we have seen, had ample notice December 2, 1901, that appellee claimed to have been seriously injured. If injured as claimed, he must have had medical or surgical attendance; the physician who attended him had an office in the city, yet it does not appear from their affidavit that they made any effort to find him before the trial. Their witness, Dr. E. I. Hook, whose testimony they refer to in support of their motion, testified that the time they called on him was the Friday next before they called him as a witness. Their statement as to what the absent physician would swear to, if present, is evidently based on information from Doctor Elisha I. Hook, which they attempted to draw from him when on the witness stand, but which the court properly excluded. Besides, if Doctor Merritt B. Hook were to swear as the affidavit says he would, we think, in view of other evidence, that no juror in the panel would believe him. They say: "Dr. Merritt B. Hook, if called as a witness herein, would testify that he was called by said plaintiff on the day following the date of the alleged accident; and that the ailments

and disabilities which the plaintiff now claims to be suffering from were, on said 3rd day of September, A. D. 1901, found by said Dr. Merritt B. Hook to have been of long standing, and a chronic condition, and that they did not proceed from and were not caused by the injuries complained of." This refers not merely to some of the ailments and disabilities claimed by appellee, but to all of them. The jurat to the affidavit is dated April 7, 1905, and presumably the motion was made that day, which, as the trial commenced March 30th, was the eighth day of the trial. The motion is analogous to a motion for a new trial, on the ground of newly discovered evidence, the rules of law applicable to which are familiar, and we think it was properly overruled, as not showing diligence, and for other reasons.

Counsel for appellant contend that appellant is not liable even though the condition of Marianna street was as claimed by appellee, and that the accident was caused as claimed by him, and say: "There is no evidence that the city of Chicago had opened the roadway of Marianna street between Western and Artesian avenues for public travel." This proposition, in view of the evidence that the city took possession of the street, and improved it, constructing sidewalks on it, and a catch basin in the roadway, and that the street, for ten or more years, has been used by the public as a public street of the city, is too preposterous to require discussion.

The evidence supports the finding of the jury that appellee exercised due care.

The evidence for appellee tends to prove that the wagon tipped by reason of a wheel going into a hole a foot or more in depth, not far from the catch basin, as averred in the declaration. We are precluded from setting aside the verdict of a jury, on the ground that it is against the weight of the evidence, unless it is clearly so, and it is obvious that were the

rule otherwise, the province of the jury might be invaded. The evidence is so conflicting that had the jury given full credence to some of appellant's witnesses, the verdict might have been for appellant. But the jury, who saw the witnesses and heard them testify, and whose province it was to consider the question of their credibility, found for appellee, and the court, who had equal opportunity with the jury to consider the evidence, overruled appellant's motion for a new trial. When evidence is irreconcilably conflicting, it is for the jury to decide which is the more credible. The evidence is conflicting as to the location of the catch basin and of the hole. It appears from the record that appellant's counsel produced a photograph purporting to show a catch basin, and exhibited it to some of the witnesses in examining them as to where the catch basin was. This photograph is not in the record; no proof of its correctness was made, nor even that it was a photograph of the catch basin which was in the street at the time of the accident, nor was it put in evidence. It is not questioned that the city put the catch basin in the street. Presumably the city keeps records of improvements, as is its duty, in which case it would seem that it should have no difficulty in proving in what part of the street the catch basin was.

The appellee testified that, at the time of the trial, in March, 1905, he was fifty-three years old, so that at the time of the accident he was about forty-nine years of age. He was a carpenter and worked ten hours per day, at twenty-five cents per hour. The evidence is that he was healthy and well prior to the accident, and capable of following his trade, and that after the accident, and after he could leave the hospital, he tried to resume his trade, and worked at it a little time, but finally had to give it up, because of his impaired physical condition caused by his injuries. Doctor Elfeldt testified that he attended appellee September 10 to 12,

1901, and examined him and found bruises across his groin and the lower part of his back, and his urine dribbling, and that his nerves of sensation were paralyzed from the lung region down; that he pricked him with a needle and he gave no sign; that he treated him three or three and a half months, and during that time his urine constantly dribbled, and that after he was able to leave his bed his gait was shuffling, and he did not seem to have full control of his legs, and that, in witness' opinion, his condition is permanent.

Appellee testified that when he had so far recovered that he could get out of bed, he found that he had a rupture, and had to use a truss, and was sent by his physician to a hospital, where he was operated on for the rupture; that he continued to wear the truss, and that before the accident he was not ruptured. It does not appear that appellant's counsel asked permission to have him physically examined. We do not think the sum awarded as damages is such as to warrant a reversal.

We find no reversible error in the record, and the judgment will be affirmed.

*Affirmed.*