## Louis E. Howe, Appellant, v. Chicago City Railway Company, Appellee.

### Gen. No. 16,755.

1. NEGLIGENCE—*when doctrine of attractive nuisance cannot be availed of.* The doctrine of attractive nuisance cannot be availed of as a basis for recovery unless the declaration in some count or counts relies thereon.

2. INSTRUCTIONS—*when estoppel to complain arises.* "A party has no right to complain of an error in an instruction, when a like error appears in an instruction given at his own request."

3. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside as against the evidence unless clearly and manifestly so.

Appeal from the Superior Court of Cook county; the HON. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed April 19, 1912.

FRANCIS X. BUSCH and FRANK A. ROCKHOLD, for appellant.

FRANKLIN B. HUSSEY and WATSON J. FERRY, for appellee; LEONARD A. BUSBY, of counsel.

MR. JUSTICE CLARK delivered the opinion of the court.

Louis E. Howe, by James E. Howe, his father as next friend, plaintiff, brought suit against the Chicago

City Railway Company, as defendant, for damages for injuries alleged to have been sustained through the negligence of the defendant. There was a trial before the court and a jury. The jury found a verdict in favor of the defendant, and after overruling a motion of the plaintiff for a new trial, the trial court entered judgment against the plaintiff, from which judgment this appeal is taken.

The accident occurred at Cottage Grove avenue and Thirty-second street, in the city of Chicago. The defendant had torn out the easterly or northbound track, and prior to the time of the accident had been engaged for some time in laying the foundation for a new track. The street was torn up at this point for the purpose, and a temporary track had been built to allow cars northbound to pass. Occasionally northbound cars used the southbound track. The accident occurred about eight o'clock in the evening. It was the practice to put danger signals consisting of lighted torches at intervals along the excavation which had been made, and one of these was located near the point where Thirty-second street intersects Cottage Grove avenue. One hundred and thirty-four feet south of Thirty-second street is what is known as Thirty-second place, which approaches Cottage Grove avenue from the east but does not cross it.

The plaintiff was a boy twelve and a half years of age, living with his parents at the southwest corner of Cottage Grove avenue and Thirty-second street, where he had lived eight or nine years prior to the accident. About eight o'clock in the evening the plaintiff started northeast across Cottage Grove avenue. He testified that when he started he noticed a car at Thirty-third street, which looked to him as though it were standing still; that he saw in the center of Cottage Grove avenue, about four or five feet from the south cross walk, a torch; that his curiosity was aroused as to how it burned; that he did not remember

whether he poked it with a stick or not, but that he investigated, and after he had been examining the torch during so long a time as it would take him to count twenty-five, he heard Mrs. Burke, who was a witness at the trial, shouting to him; that before he began to examine the torch, and after he had stepped into the excavation, he glanced to see if a car was coming, because he realized that he was running a risk; that Mrs. Burke called to him to "Come away; come out of there, the car is coming;" that he made no answer, nor did he look behind him to see if a car was coming; that he was facing south, and saw none coming from that direction. He testified that Mrs. Burke again shouted to him, but he did not look north; that he then put his foot on the east rail of the south-bound track, and tried to pull the other up; then stepped back into the ditch to ascertain what the trouble was; that he did not see any wire at the time, and was ignorant of what caught his foot; that he had not moved his feet after he had assumed a stooping position. He testified that he shouted loudly to Mrs. Burke that his foot was caught, but in this respect was not corroborated by other witnesses. He was struck and severely injured by a southbound car.

The contention of appellant is, as detailed in the fourth and fifth counts of his declaration, that a certain wire was on the surface of the ground, so twisted and coiled up as to be likely to catch the feet of people who might have occasion to cross the avenue and Thirty-second street; that while plaintiff was exercising due care, he necessarily and unavoidably got his foot caught in the wire, and while extricating it the defendant negligently and carelessly, etc., so managed and controlled its certain southbound car that it struck him. In the fifth count it was further charged as negligence of the defendant that it drove the car over the intersection without keeping any lookout to discover the presence of the plaintiff. In the second and third

counts additional charges of negligence are made of the running of the car at a high and dangerous rate of speed, and in approaching Thirty-second street without warning by bell or otherwise. In the first count there is a general charge of negligence in operation.

The first point urged for reversal is that the verdict was manifestly contrary to the great weight and preponderance of the evidence. One of the chief questions in controversy is whether or not there was a wire at the place of the accident, such as is referred to in the fourth and fifth counts of the declaration, and whether the boy's foot was caught in this wire. One of the witnesses for plaintiff, a Mr. Graves, testified on direct examination that there was some wire between the tracks where the boy was; that he was the first one who reached the boy, but did not notice any wire; that he did not notice it until after he had been in the hallway leading to the flat occupied by the plaintiff's parents, where he was gone five minutes, and that his attention was then directed to a piece of wire in the street.

A witness named Wunderle testified for the plaintiff that he noticed a coil of wire near where the boy was picked up; that it was of spiral shape; that it was right at the boy's foot. He further testified that he saw the boy lifted from the ground, but did not notice that.any part of the wire was attached to him.

The father of the boy testified that he heard a lady shouting that his boy was struck by a car; that he went right in back of the car; that he did not notice anything at that time, but the next morning he observed the wire. He further testified that when he turned the boy over that night "his toes were in the edge of the wire." He further testified that neither of the boy's feet touched the wire, and that the toe of the right foot was in the loop. His testimony that he picked the boy up is discredited by the fact that three

witnesses for the plaintiff, namely Wunderle, Graves and Mrs. Burke, testified that Graves picked him up.

The plaintiff himself testified that he saw no wire in the excavation.

A photograph was introduced in evidence, which was taken on the Sunday following the Wednesday on the evening of which the accident occurred.

The father testified that the loose end of the wire that extended into the ground was "right close to the nearest rail, practically right up to it, within an inch of it;" and was about seven feet north of the center line of Thirty-second street. The photographer testified that the wire entered the ground eight inches from the nearest rail to the east track, and was three or four feet north of the south curb line of Thirty-second street. Thirty-second street appears from the record by actual measurement to be 38 feet wide between the curbs. It would seem that the photographer located the wire three or four feet north of the south curb line, while by the father's testimony it was 20 or 21 feet north of that line.

Some argument is made by the appellant that the doctrine of attractive nuisances has application to the case. In none of the counts of the declaration is there any allegation on that subject. The matter is discussed by the appellant in his brief upon the proposition that he was guilty of no negligence which proximately contributed to the injury. The question of contributory negligence was left to the jury, under appropriate instructions given at the request of plaintiff, and others tendered by defendant.

At the close of all the testimony the defendant requested the court to charge the jury to find a verdict for the defendant. In our opinion, the giving of such instruction would not have been erroneous. The trial judge, however, overruled the motion, and in his charge to the jury incorporated 13 instructions requested by the plaintiff and 25 tendered by the defendant. Five

of the instructions given at the request of defendant are criticised by the plaintiff, and after a careful consideration of them, we feel that these criticisms are to some extent warranted by decisions in adjudicated cases to which our attention is called. As to one or more of the instructions so criticised, the defendant insists that the plaintiff is estopped, because an instruction was tendered by him which was of a like character. The off-setting or balancing of errors in instructions seems to be established in this state, evidently being deemed necessary because of the manner in which juries are instructed under our practice. In C. & A. R. R. Co. v. Harrington, 192 Ill. 9, it is said: "A party has no right to complain of an error in an instruction, when a like error appears in an instruction given at his own request." C. & A. R. R. Co. v. Sanders, 154 Ill. 531; Funk v. Babbitt, 156 *id.* 408; Hafner v. Herron, 165 *id.* 242; I. C. R. R. Co. v. Bebee, 174 *id.* 13; I. C. R. R. Co. v. Anderson, 184 *id.* 294; Chicago City Ry. Co. v. Pural, 224 *id.* 324. We think it sufficient to say that the charge of the court to the jury was of such a character as tended on the whole fairly to advise the jury of the law by which it should be governed in arriving at a verdict, provided the assumption be indulged in that the motion to direct a verdict should not have been entertained. The errors in instructions were not of such a character as should cause a reversal.

The jury having heard all the evidence, found for the defendant; the learned and experienced trial judge, also having had the advantage of seeing and hearing the witnesses, was of the opinion that the verdict was not against the weight of the evidence, and that it should not be disturbed. In our opinion, a new trial could not properly result in any different conclusion.

For the reasons stated, the judgment will be affirmed.                                    *Affirmed.*